WISCONSIN RETIRED TEACHERS ASSOCIATION, INC., Conan S. Edwards, Donald G. McCloskey, Margaret McCabe, Martha M. Schmidt and Mary Grace Jeffery, Plaintiffs-Respondents-Cross Appellants-Cross Petitioners,

WISCONSIN EDUCATION ASSOCIATION COUNCIL, by its President, James Blank, Richard Collins, David Camplin, Phillip Dowling and Michael Zemplinski, Individuals, Intervening Plaintiffs-Respondents-Cross Appellants-Cross Respondents,

v.

EMPLOYE TRUST FUNDS BOARD, Paul Adamski, David J. Anderson, Constance P. Beck, Gale Duschak, JoAnn Elder, Stephen Frankel, Vincent Graham, Marvin Grosskreutz, William F. Kienzle, Barbara A. Monroe, James R. Klauser, Secretary of the Wisconsin Department of Administration, Gary Gates, Secretary of the Department of Employe Trust Funds and State Engineering Association, by its Board of Directors, Bernard E. Kranz, Melvin B. Sensenbrenner, Robert W. Schaefer, Jerry A. Sieling, Roger A. Bohn, James A. Andreshak, Steven Noel, Ronald S. Hett, William E. Sheppard, Richard Feeney, James B. Rice, Robert S. Merila, Thomas F. Dobson, Richard M. Story, Nile A. Ostenso (who are also plaintiffs in their individual capacities), and Charles W. Newhouse, and the

1

Association of Career Executives, and its President, James S. Thiel (who is also a plaintiff in his individual capacity), Plaintiffs-Respondents-Cross Appellants-Cross Petitioners,

WISCONSIN EDUCATION ASSOCIATION COUNCIL, by its President, James Blank, Richard Collins, David Camplin, Philip Dowling and Michael Zemplinski, Individuals, Intervening Plaintiffs-Respondents-Cross Appellants-Cross Petitioners,

v.

EMPLOYE TRUST FUNDS BOARD, Paul Adamski, David J. Anderson, Constance P. Beck, Gale Duschak, JoAnn Elder, Stephen Frankel, Vincent Graham, Marvin Grosskreutz, William F. Kienzle, Barbara A. Monroe, James J. Murphy, Donald Smart, Mark Stone, Kenneth Stelzig, Curtis Thomas, Marilyn Wigdahl, The Department of Employe Trust Funds and its Secretary, Gary I. Gates, Defendants-Appellants-Cross Respondents,

James R. KLAUSER, Secretary of the Wisconsin Department of Administration and Charles P. Smith, State Treasurer, Defendants-Co-Appellants-Cross Respondents-Petitioners.

Supreme Court

*No. 94–0712. Oral argument September 4, 1996.—Decided January 17, 1997 (Amended).*

(Also reported in 558 N.W.2d 83.)

2

For the defendants-co-appellants-cross respondents-petitioners there were briefs by *Ann Ustad Smith, Arvid A. Sather* and *Michael, Best & Friedrich*, Madison and oral argument by *Ann Ustad Smith.*

For the plaintiffs-respondents-cross appellants-cross petitioners there was a brief by *William Haus* and *Michael E. Banks*, Madison and oral argument by *William Haus.*

For the plaintiffs-respondents-cross appellants-cross petitioners there were briefs by *John William Calhoun, John H. Bowers, Aaron N. Halstead* and *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer*, Madison.

For the defendants-appellants-cross respondents there was a brief by *Thomas M. Pyper* and *Whyte, Hirschboeck, Dudek, S.C.* and *Peter L. Gardon* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.*, all of Madison and oral argument by *Thomas Pyper.*

For the intervening plaintiffs-respondents-cross appellants-cross petitioners there were briefs by *Chris Galinat, Bruce Meredith, Anthony L. Sheehan* and *Wisconsin Education Association Council*, Madison.

Amicus curiae brief was filed by *Richard Thal, Margaret Becker* and *Cullen, Weston, Pines & Bach*, Madison for the Wisconsin Professional Police Association.

¶ 1. ANN WALSH BRADLEY, J. Defendants, James R. Klauser, Secretary of the Wisconsin Department of Administration, and Charles P. Smith, State Treasurer, seek review,[1] and the plaintiffs, the State

---

[1] We refer to Secretary Klauser and Treasurer Smith collectively as the "Administration Defendants." Secretary Gates of

Engineering Association (SEA), the Wisconsin Retired Teachers Association (WRTA), and the Wisconsin Education Association Council (WEAC), seek cross-review, of a published decision of the court of appeals. *Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Bd.*, 195 Wis. 2d 1001, 537 N.W.2d 400 (Ct. App. 1995). The court of appeals' decision affirmed in part and reversed in part a decision of the circuit court for Dane County, Angela B. Bartell, Judge.

¶ 2. At issue is the constitutionality of 1987 Wis. Act 27, §§ 436m, 684r, and 688km,[2] under which Wisconsin Retirement System (WRS) trust funds were used to pay a "Special Investment Performance Dividend" (SIPD) to certain WRS annuitants.[3] We conclude

the Department of Employe Trust Funds, and the Employe Trust Fund Board, (together, "the ETF Defendants") did not request review of the court of appeals' decision.

[2] This opinion uses the terms "Act 27" and "the SIPD legislation" interchangeably to reference the challenged legislation.

[3] Section 684r of Act 27 created Wis. Stat. § 40.04(3)(e), which provides in part:

1. As of September 30, 1987, $230,000,000 shall be distributed from the transaction amortization account of the fixed retirement investment trust to the appropriate reserve of the fixed retirement investment trust as follows:

a. The portion credited to the fixed annuity reserve shall be distributed by the board as soon as possible after August 1, 1987, but with an effective date of July 1, 1987. Notwithstanding s. 40.27 (2), the board shall make the distribution as a special investment performance dividend to provide an annuity increase only to those persons currently receiving a supplemental benefit under s. 40.27 (1) and (1m), 1985 stats. Any payment under s. 20.515(1)(a) to annuitants receiving special investment performance dividends under this subdivision shall be reduced by the amount of the special investment performance dividends under this subdivision. . . .

c. The board shall make the distribution under subd. 1. a. as soon as possible after August 1, 1987. Until such time as the special investment performance dividend is effective, the supplemental

that Act 27 and its implementation constitute a taking of the plaintiffs' property without just compensation, in violation of Article I, § 13 of the Wisconsin constitution.[4] Accordingly, we order the Administration Defendants, in their official capacities, to replenish the WRS fixed annuity reserve account in an amount equal to all funds paid out of the account pursuant to Act 27, plus interest at the effective rate. *See* Wis. Stat. § 40.02(23) (1987–88).[5] We also conclude that the ETF Defendants did not breach their fiduciary duties by implementing Act 27. Finally, we determine that the plaintiffs are entitled to reasonable attorney fees to be paid out of the recovery under the "common fund" doctrine.

## I. FACTS

¶ 3. Chapter 40 of the Wisconsin Statutes creates and governs the Public Employe Trust Fund, a system of benefits designed to protect public employees from the financial hardships of old age, disability, illness, and accidents. Wis. Stat. § 40.01(1). The Department of Employe Trust Funds (DETF) is an executive branch agency administering the Trust Fund "under the direc-

---

annuity benefit under s. 40.27(1) and (1m), 1985 stats., shall continue to be funded from money available under s. 20.515(1)(a). After the effective date of the special investment performance dividend, the department shall provide from the portion to be credited to the fixed annuity reserve funds sufficient to reimburse the appropriation under s. 20.515(1)(a) for supplemental benefits payments made after June 30, 1987.

[4] Article I, § 13 of the Wisconsin Constitution provides:

The property of no person shall be taken for public use without just compensation therefor.

[5] All future statutory references are to the 1987–88 volume unless otherwise indicated.

tion and supervision of the employe trust fund board." Wis. Stat. § 15.16. The ETF Board appoints the Secretary of the DETF. § 40.03(1)(c).

¶ 4. Within the Trust Fund, there is a fixed retirement investment trust (FRIT). § 40.04(3). The FRIT receives funds from three sources: (1) contributions from participating employees; (2) contributions from participating employers; and (3) investment earnings on the employee and employer contributions.

¶ 5. There are four accounts within the FRIT. First, there is an employee accumulation reserve account, which holds funds related to employee contributions. § 40.04(4). Second, there is an employer accumulation reserve account, which holds funds related to employer contributions. § 40.04(5). Third, there is an annuity reserve account, which holds funds sufficient to make annuity payments to those retiring public employees who choose to receive their retirement benefits on an installment basis. § 40.04(6). When an employee retires and elects to take an annuity, the employee and employer accumulation reserves transfer to the annuity reserve an amount equal to the present value of the annuity. § 40.04(6). Fourth, there is a transaction amortization account (TAA). § 40.04(3). The TAA is an accounting mechanism which allows the three reserve accounts to spread over time the recognition of gain or loss on investments, thus partially insulating annuitants from the fluctuations of the investment marketplace. Every year, each of the FRIT's three reserve accounts is credited with a proportionate share of the TAA balance. § 40.04(3)(a).[6]

---

[6] At the time that this litigation arose, the annual TAA transfer to the FRIT was fixed at 7% of the current TAA balance. The legislature has since raised the figure to 20%. 1989 Wis. Act 13, § 9.

¶ 6. Depending upon the investment performance of the FRIT's assets, a surplus may be generated in the annuity reserve. Wisconsin Stat. § 40.27[7] authorizes and governs post-retirement adjustments to annuities based upon the occurrence of surpluses in the annuity reserve account. On an actuary's recommendation, the ETF Board must distribute an annuity reserve account surplus to annuitants "if the distribution will result in at least a 2% increase in the amount of annuities in force." § 40.27(2). Distributions must be "expressed as percentage increases in the amount of the monthly annuity in force." § 40.27(2)(a). Any prior § 40.27(2) annuity reserve account surplus distributions are included for purposes of calculating the

---

[7] Section 40.27(2) provides:

(2) FIXED ANNUITY RESERVE SURPLUS DISTRIBUTIONS. Surpluses in the fixed annuity reserve established under s. 40.04 (6) and (7) shall be distributed by the board if the distribution will result in at least a 2% increase in the amount of annuities in force, on recommendation of the actuary, as follows:

(a) The distributions shall be expressed as percentage increases in the amount of the monthly annuity in force, including prior distributions of surpluses but not including any amount paid from funds other than the fixed annuity reserve fund, preceding the effective date of the distribution. For purposes of this subsection, annuities in force include any disability annuity suspended because the earnings limitation had been exceeded by that annuitant in that year.

(b) Different percentages may be applied to annuities with different effective dates as may be determined to be equitable but no other distinction may be made among the various types of annuities payable from the fixed annuity reserve.

(c) The distributions shall not be offset against any other benefit being received but shall be paid in full, nor shall any other benefit being received be reduced by the distributions. The annuity reserve surplus distributions authorized under this subsection may be revoked by the board in part or in total as to future payments upon recommendation of the actuary if a deficit occurs in the fixed annuity reserves.

11

percentage increase in an annuity. *Id.* The ETF Board has the equitable discretion to give annuitants varying percentage increases, based solely upon the effective date of the annuity. § 40.27(2)(b). The distributions made under § 40.27(2) cannot reduce, or be reduced by, any other benefits. § 40.27(2)(c). Finally, the surplus distributions do not become a part of a retiree's base annuity, which is guaranteed by the State. Rather, the ETF Board can revoke § 40.27(2) annuity increases when necessary to preserve the financial integrity of the fixed annuity reserve. *Id.*

¶ 7. The legislature has frequently changed the formula for calculating a retiring employee's initial annuity benefit. These changes generally increase a retiree's base annuity, and have always been applied prospectively. As a result, state employees retiring prior to statutory increases in base annuities receive no enhancement of their base annuity. *See*, Retirement Research Committee Staff Report #76, *Review of WRS Annuitant Equity and Adequacy Concerns* (1985). Benefits "cliffs" are created between those retiring before and those retiring after beneficial legislation.

¶ 8. The legislature has attempted to blunt the erosive economic effect of these benefits "cliffs" by providing "supplemental benefits" to older annuitants. Since 1974, the legislature has provided supplemental benefits to pre–1974 annuitants in an effort to bring their benefits more into line with those of post–1974 annuitants.[8] These supplemental benefits are paid from general purpose revenue (GPR), and are subject to continuing appropriation by the legislature. They

---

[8] *See, e.g.*, § 2, ch. 337, Laws of 1973. The term "pre–1974 annuitants" refers to class plaintiffs retiring prior to October 1974, while "post–1974 annuitants" refers to class plaintiffs retiring on or after October 1, 1974.

12

are administered by the DETF, and are added to the monthly checks of eligible annuitants.

¶ 9. In 1987, the legislature enacted the legislation at issue in this case.[9] Act 27 caused approximately $78.6 million to be transferred from the TAA to the annuity reserve account. Wis. Stat. § 40.04(3)(e)1.[10] The Act ordered the ETF Board to distribute the transferred money as a special investment performance dividend payable only to those annuitants then receiving GPR-funded supplemental benefits. § 40.04(3)(e)1.a. Only pre–1974 annuitants received supplemental benefits. The legislation also ordered that an annuitant's supplemental benefits be reduced by the amount of SIPD payments that he or she received. *Id.*

¶ 10. At the time of the SIPD legislation's enactment, GPR supplemental benefits were available to about one-quarter of the 76,763 retirees then receiving annuities out of the fixed annuity reserve. Because SIPD payments were made available only to GPR supplemental benefits recipients, Act 27 rendered about three-quarters of all annuitants ineligible to receive any portion of the SIPD distribution. If all annuitants had shared the SIPD payments on a pro rata basis, each annuitant would have experienced a 2.4–2.6% increase in his or her monthly check.

¶ 11. The annuity reserve already had a surplus of $6.1 million at the time of the enactment of the SIPD legislation. The legislation did not reference the disposition of any pre-existing annuity reserve surplus. Secretary Gates and the ETF Board included the $6.1

[9] 1987 Wis. Act 27, §§ 436m, 684r, 688km.

[10] The $78.6 million is the annuity reserve account's share of the $230 million transferred from the TAA to the various FRIT accounts.

million in the SIPD distribution framework. Thus, a total of $84.7 million was made available for distribution to pre–1974 annuitants.

¶ 12. The legislation had an effective date of July 1, 1987, but took several months to implement. The GPR supplemental benefits appropriation was continued for the interim. Wis. Stat. § 40.04(3)(e)1.c. However, the Act ordered the DETF to reimburse the State for the interim GPR expenditures. *Id.* This reimbursement totaled $3.8 million, and was made out of the funds transferred from the TAA to the annuity reserve account. *Id.*

¶ 13. Before implementing Act 27, the ETF Defendants sought and received an attorney general opinion on the constitutionality of the legislation. 76 Op. Att'y Gen. 299 (1987). The attorney general opined that the statute did not violate the contracts clause of the Wisconsin constitution, Wis. Const. art. I, § 12. In response to a legislator's request, the attorney general also issued a separate opinion that the Act did not violate the extra compensation clause, Wis. Const. art. IV, § 26. 76 Op. Att'y Gen. 224 (1987). After receiving the attorney general's advice, the ETF Defendants implemented the SIPD legislation.

¶ 14. Plaintiffs SEA and WRTA commenced separate actions in the circuit court against the ETF Defendants.[11] The circuit court granted both WEAC's motion to intervene as a party plaintiff, and WRTA's motion to consolidate. Together, the plaintiffs alleged that Act 27 constitutes: (1) a taking without just compensation, contrary to Wis. Const. art. I, § 13; (2) a grant of extra compensation from other than State

---

[11] The Administration Defendants were later added as defendants by SEA's amended complaint.

funds, contrary to Wis. Const. art. IV, § 26;[12] and (3) an impairment of contract, contrary to U.S. Const. art. I, § 10 and Wis. Const. art I, § 12.[13] WEAC further alleged that the ETF Defendants breached their fiduciary duties by implementing the legislation.

¶ 15. The circuit court divided the trial into two phases. In issuing its first phase decision and order, the circuit court concluded that Act 27 amounted to an unconstitutional grant of extra compensation to SIPD payment recipients. Moreover, the circuit court determined that the implementation of the legislation impaired the contract between WRS annuitants and the State, and constituted a breach of the ETF Defendants' fiduciary duties. After its first phase decision, the circuit court certified the action as a class action on behalf of annuitants who would have been eligible to receive an annuity reserve on December 31, 1987.

---

[12] Article IV, § 26 of the Wisconsin constitution provides in part:

> The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered. . . . This section shall not apply to increased benefits for persons who have been or shall be granted benefits of any kind under a retirement system when such increased benefits are provided by a legislative act passed on a call of ayes and noes by a three-fourths vote of all the members elected to both houses of the legislature, which act shall provide for sufficient state funds to cover the costs of the increased benefits.

[13] Article I, § 10 of the United States Constitution provides in part:

> No state shall. . .pass any. . .law impairing the obligation of contracts. . . .

Article I, § 12 of the Wisconsin constitution provides in part:

> No. . .law impairing the obligation of contracts, shall ever be passed. . . .

¶ 16. In its second phase decision, the circuit court supplemented its constitutional determinations by concluding that the legislation also effected a taking of property without just compensation. The court did not enjoin the implementation of the SIPD. Instead, the court exercised its equitable powers to fashion a "minimalist remedy" solely for the benefit of post–1974 annuitants. First, the ETF Defendants were ordered to pay retrospective relief in their official capacities. This retrospective relief was in the form of a lump sum representing a two percent annuity increase as of July 1, 1987, plus five percent investment earnings compounded annually from that date to the date of the lump sum payment. Second, the ETF Defendants, again in their official capacities, were ordered to pay prospective relief. This prospective relief took the form of a permanent annuity increase based upon a two percent increase on July 1, 1987, and five percent annually compounded earnings from that date to the date of the post–1974 annuitants' regular August 1994 monthly payments. Finally, the ETF Defendants were ordered to pay the plaintiffs' attorney fees. The court reasoned that because their breach of fiduciary duty rose to the level of mismanagement, the plaintiffs were entitled to attorney fees under Wis. Stat. § 814.14.[14]

[14] Wis. Stat. § 814.14 provides:

814.14 **Fiduciary; liability for costs limited; bond premium.** In any action or proceeding prosecuted or defended in any court in Wisconsin by [a]. . .trustee of an express trust,. . .unless otherwise specially provided, costs shall be recovered as in an action by and against a person prosecuting or defending in the person's own right; but such costs shall be chargeable only upon or collected of the estate, fund or party represented, unless the court shall direct the same to be paid by the plaintiff or defendant personally, for mismanagement or bad faith in such action, proceeding or defense.

¶ 17. On review, the court of appeals also concluded that Act 27 is unconstitutional. Unlike the circuit court, however, the court of appeals invalidated and enjoined the implementation of the Act, relying exclusively on the takings clause, Wis. Const. art. I, § 13. The court of appeals reversed the circuit court's determination that the defendants breached their fiduciary duties by implementing the SIPD legislation.

¶ 18. The court of appeals also reversed the circuit court's "minimalist remedy" determination, concluding that it was constitutionally insufficient. Instead, the court of appeals ordered the Administration Defendants to pay from the State treasury to the annuity reserve an amount equal to the GPR expenditures saved as a result of the distributed SIPD.[15] Additionally, the court awarded interest at the average earnings rate of the trust fund from the date of the first SIPD distribution to the date of repayment. Finally, the plaintiffs' attorney fees were ordered paid out of the recovery under the "common fund" theory. SEA, WEAC, WRTA, and the Administration Defendants then petitioned this court for review.

## II. Constitutionality of Act 27

¶ 19. The first issue we address is whether Act 27 violates Article I, § 13 of the Wisconsin constitution, which provides that: "The property of no person shall be taken for public use without just compensation therefor." Because the plaintiffs challenge the constitutionality of Act 27, a question of law is presented, which

---

[15] The court included in this amount the $6.1 million pre-existing annuity reserve surplus, as well as the $3.8 million reimbursement to GPR.

we review without deference to the decisions of the circuit court and court of appeals. *Association of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 557, 544 N.W.2d 888 (1996). We note that Act 27 enjoys the same strong presumption of constitutionality as any other legislative enactment. *State v. Carpenter*, 197 Wis. 2d 252, 263, 541 N.W.2d 105 (1995). In order to overcome this presumption, the plaintiffs must demonstrate that the statute is unconstitutional beyond a reasonable doubt. *Id.*

¶ 20. When conducting a takings analysis, we begin by determining whether a property interest exists. *Noranda Exploration, Inc. v. Ostrom*, 113 Wis. 2d 612, 624–25, 335 N.W.2d 596 (1983). The parties do not dispute, and we agree, that WRS annuitants have a property interest in the WRS. The annuitants' interest finds its genesis both in chapter 40 and in prior decisions of this court. Specifically, § 40.19(1) provides:

> 40.19 Rights preserved. (1) Rights exercised and benefits accrued to an employe under this chapter for service rendered shall be due as a contractual right and shall not be abrogated by any subsequent legislative act. The right of the state to amend or repeal, by enactment of statutory changes, all or any part of this chapter at any time, however, is reserved by the state and there shall be no right to further accrual of benefits nor to future exercise of rights for service rendered after the effective date of any amendment or repeal deleting the statutory authorization for the benefits or rights. This section shall not be interpreted as preventing the state from requiring forfeiture of specific rights and benefits as a condition for receiving subsequently

enacted rights and benefits of equal or greater value to the participant.

██

¶ 21. We also agree with the parties that WRS annuitants have a contract right to have dividends distributed consistent with § 40.27(2). Recently, we reaffirmed the rule that an individual's contractual rights in a public employee retirement system create a property interest in his or her retirement system as a whole. *Association of State Prosecutors*, 199 Wis. 2d at 558.

> The earnings on investments. . .constitute assets of the [retirement] system. . . .The right [in the retirement system] includes the proper use of the earnings. . . .[T]he legislature and the plaintiff board are not free to spend or appropriate the earnings of the fund except in a manner authorized by statute relating to the. . .retirement system.

*State Teachers' Retirement Board v. Giessel*, 12 Wis. 2d 5, 10, 106 N.W.2d 301 (1960), *quoted with approval in Association of State Prosecutors*, 199 Wis. 2d at 559. These cases establish the property interest of WRS annuitants in the proper distribution of surplus investment earnings contained in the annuity reserve account.

¶ 22. The Administration Defendants assert that the plaintiffs, as individual annuitants, have no more than a mere unilateral expectation that the Board will grant them a portion of any surplus distribution out of the annuity reserve. While the defendants may be correct in their assertion, they miss the focus of the inquiry. We are concerned not with an annuitant's right to a share of surplus distributions, but instead with the right of every annuitant to have surplus dis-

tributions made in a manner consistent with the strictures of § 40.27(2). The defendants do not dispute that such a right exists.

¶ 23. If a recognizable property interest exists, we then consider whether the right has been taken. *Zinn v. State*, 112 Wis. 2d 417, 424, 334 N.W.2d 67 (1983). Thus, we must determine whether the SIPD legislation "takes" the plaintiff annuitants' property interest in having annuity reserve account surpluses distributed in the manner prescribed by § 40.27(2). To the extent that the legislation violates the plaintiffs' § 40.27(2) rights, it effectively takes those rights.

¶ 24. Section 40.27(2) grants the ETF Board the discretion to vary annuity reserve surplus distributions "as may be determined to be equitable." We read this section to execute an exclusive grant of discretionary authority to the ETF Board, and agree with the Administration Defendants that:

> [a]bsent [an erroneous exercise] of that discretion, it is for the Board alone to determine how and in what proportion dividends are distributed.

Reply Brief at p. 10. Thus, on the facts of this case, Act 27 violates § 40.27(2) if it eliminates or limits the ETF Board's discretion to equitably vary the distribution of the $84.7 million annuity reserve surplus.

¶ 25. The SIPD legislation transferred funds from the TAA to the annuity reserve account. Because the transfer created a surplus in the annuity reserve account exceeding two percent of the "amount of annuities in force," a distribution was triggered under § 40.27(2). In the absence of Act 27, the ETF Board would then distribute the surplus, with the discretion to increase certain annuities by a greater or lesser percentage than others, as informed by equitable

20

considerations.[16] Under Act 27, however, a different scenario emerged.

¶ 26. The legislation required the ETF Board to distribute the annuity reserve's investment earnings only to those annuitants then receiving supplemental benefits, "notwithstanding s. 40.27(2)(b)." *See* § 40.04(3)(e)1.a. Counsel for the Administration Defendants conceded before this court that Act 27 left the ETF Board with no discretion to grant post–1974 annuitants a share of the annuity reserve surplus created by the TAA transfer. The defendants nevertheless maintain that the legislation preserved the ETF Board's equitable discretion, as it was the Board which developed and approved the formula under which the SIPD was eventually distributed.

¶ 27. We cannot agree with the defendants. Section 40.27(2) describes some of the terms of the WRS contract. Among those terms is the guarantee that variations in surplus distributions will be made in the Board's equitable discretion. The SIPD legislation mandated a distribution limited to pre–1974 annuitants, eliminating the ETF Board's equitable authority to grant a portion of the annuity reserve surplus to post–1974 retirees. On this basis, we conclude that Act 27 effected a violation of § 40.27(2).[17]

¶ 28. Section 40.27(2) also prevents the use of annuity reserve surplus distributions to reduce other

---

[16] Prior to the SIPD legislation, the ETF Board had not acted to distribute annuity reserve surpluses on other than a pro rata basis.

[17] Because we determine that the SIPD stripped the ETF Board of the equitable discretion guaranteed by § 40.27(2)(b), we do not reach the plaintiffs' assertion that the resultant distribution was inherently inequitable.

benefits received by WRS annuitants. Section 40.27(2)(c) provides in part:

> The distributions shall not be offset against any other benefit being received but shall be paid in full, nor shall any other benefit being received be reduced by the distributions. . . .

According to the plaintiffs, Act 27 violates the "no offset" language in § 40.27(2)(c) by reducing an annuitant's GPR-funded supplemental benefits by the amount of SIPD payments received.

¶ 29. The legislature has not granted pre–1974 WRS annuitants a contract right to the continued receipt of GPR-funded supplemental benefits. Rather, supplemental benefits are subject to continuing legislative appropriation. *See* § 40.27(1)(a), *repealed by* 1987 Wis. Act 27, § 688km. However, the reduction of supplemental benefits must be viewed in the context of the legislation's corresponding distribution of SIPD.

¶ 30. Act 27 did not simply repeal pre–1974 annuitants' entitlement to GPR-funded supplemental benefits. The legislation also varied the distribution of investment earnings in order to achieve an upward adjustment of benefits for the same pre–1974 annuitants. The Administration Defendants concede that there is a relationship between the legislation's grant of SIPD payments and the reduction in supplemental benefits. That this "relationship" is an offsetting one is amply demonstrated by the wording of the statute:

> Any payment under s. 20.515(1)(a) [supplemental benefits] to annuitants receiving special investment performance dividends under this subdivision shall be reduced by the amount of the special investment performance dividends under this subdivision.

22

Thus, an annuitant's supplemental benefits are reduced dollar-for-dollar by the SIPD payments that he or she receives. We conclude that, by mandating an increase in a retiree's annuity-based benefits while simultaneously reducing his or her otherwise terminable supplemental benefits, the legislation violated the proscription against offsetting contained in § 40.27(2)(c).[18]

¶ 31. The Act also improperly mandated a $3.8 million reimbursement to GPR from the annuity reserve account for supplemental benefits made during the interim period between the effective date of the legislation and its implementation. Section 40.27(2) governs the distribution of investment earnings of the annuity reserve, and it anticipates payments only to annuitants. The section is utterly devoid of any authority for using annuity reserve funds to reimburse a governmental entity for non-trust obligations. We therefore conclude that the Act further violated § 40.27(2) by mandating a reimbursement for interim GPR supplemental benefits, a non-trust obligation.

¶ 32. This court finds unpersuasive the Administration Defendants' undeveloped assertion that the State, as settlor of the FRIT trust fund, is empowered to unilaterally alter the terms of the WRS contract. The system of benefits provided by the Wisconsin Retirement System is no mere legislative gratuity. Rather, benefits are a form of deferred compensation for service provided. When a public employee chooses to take his or her retirement benefits in the form of an annuity, he or she is thereby guaranteed certain rights under the WRS contract. *See* § 40.19(1). One such right is to have

---

[18] We note that a repeal of supplemental benefits accompanied by an unencumbered TAA transfer to the annuity reserve would not necessarily constitute an offset.

investment earnings distributed in a manner consistent with § 40.27(2). As party to the WRS contract, the State is bound to honor that right.

¶ 33. We have determined that the SIPD legislation violates § 40.27(2) by stripping the ETF Board of its exclusive authority to equitably distribute surplus investment earnings of the annuity reserve. The legislation also reduces an annuitant's supplemental benefits by the amount of SIPD received, in violation of the § 40.27(2)(c) proscription against "offsetting." Finally, the Act violated § 40.27(2) by mandating a wholly unauthorized reimbursement to the State treasury for GPR supplemental benefits made during the period between the Act's effective date and implementation. We therefore conclude that Act 27 takes the plaintiffs' property interest in having distributions of annuity reserve surpluses made consistent with § 40.27(2).

¶ 34. Having concluded that the plaintiffs have a property interest in the WRS, and that it has been taken, we next determine if the taking was: (1) for a public purpose, and (2) without just compensation. All parties agree that the legislature enacted the SIPD legislation for the purpose of reducing GPR outlays. In addition, the Administration Defendants assert that Act 27 was intended to blunt the impact of inflation on the retirement system's oldest annuitants. The asserted purposes are not mutually exclusive. There is no inherent contradiction in attempting to both reduce fiscal outlays and provide for needy retirees. Because both inure to the benefit of the public, there is no dispute that if a taking has occurred, it is for a public purpose.[19]

---

[19] We note that Act 27 essentially took and redistributed trust fund assets. Such an act is analogous to a permanent

¶ 35. Since the Administration Defendants contend that Act 27 does not constitute a taking, it is their position that there is no need for just compensation. Therefore, they do not dispute the plaintiffs' assertion that just compensation has not been paid. We defer our discussion of the measure of just compensation until later in this opinion.

■

¶ 36. To summarize our conclusions, under § 40.19(1), *Giessel* and *Association of State Prosecutors*, the plaintiff annuitants have a property right in the investment earnings of the annuity reserve account. This property right includes the right to have annuity reserve surpluses distributed in a manner consistent with § 40.27(2). Act 27 violated § 40.27(2) by usurping the Board's authority to equitably distribute annuity reserve surpluses, by reducing annuitants' supplemental benefits in an amount equal to their SIPD payments, and by mandating an unauthorized reimbursement to GPR for interim supplemental benefits. These violations of § 40.27(2) take the plaintiffs' property rights for a public purpose and without just compensation. We therefore determine that Act 27 is unconstitutional beyond a reasonable doubt.[20]

---

physical occupation of land, which has always been a compensable taking "without regard to the public interests that it may serve." *Noranda*, 113 Wis. 2d at 629, *citing Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432 (1982).

[20] Because we conclude that Act 27 is unconstitutional under Wis. Const. art. I, § 13, we do not reach the plaintiffs' claims under Wis. Const. art. I, § 12 and Wis. Const. art. IV, § 26.

### III. Fiduciary Breach

¶ 37. The circuit court determined that the ETF Defendants violated their fiduciary duties as WRS trustees when they implemented Act 27. The court reasoned that the ETF Defendants' duty to administer the trust for the benefit of all annuitants required them to seek court guidance prior to implementing legislation of doubtful constitutionality. *See State ex rel. Morse v. Christianson*, 262 Wis. 262, 266, 55 N.W.2d 20 (1952).

¶ 38. The court of appeals reversed, concluding that the ETF Defendants did not breach their fiduciary duties. We agree, and adopt the court of appeals' reasoning as our own. When the ETF Defendants perceived a potential conflict between the Act 27 provisions and the existing trust instrument, they sought and received the opinion of the attorney general. They then fully implemented the Act in good-faith reliance on the attorney general's opinion that the legislation was constitutional. By implementing the SIPD legislation, the trustees were complying with the statute as written. *Retired Teachers Ass'n*, 195 Wis. 2d at 1041.

¶ 39. In addition, the court of appeals noted that *Morse* "does not require resort to a court where the attorney general has already rendered an opinion." *Id.* at 1043. The *Morse* court stated that before making expenditures, trustees must seek judicial interpretation of unclear laws. 262 Wis. at 266. However, the court provided no further analysis or support for the proposition. We take this opportunity to supplement the *Morse* decision, concluding that on these facts, the trustees upheld their fiduciary duties by implementing Act 27 in good-faith reliance on the opinion of constitutionality rendered by the attorney general. Accordingly, we determine that the ETF Defendants

26

did not breach their fiduciary duties by implementing Act 27 without first obtaining a court determination that the statute was constitutionally valid.[21]

## IV. Remedy for an Unconstitutional Taking

¶ 40. We next determine the remedy for the taking of the plaintiffs' property rights. Initially, we address sovereign immunity and the plaintiffs' failure to file a Wis. Stat. § 893.82 notice of injury,[22] as either

---

[21] WEAC argues that Act 27 did not require that the preexisting $6.1 million annuity reserve surplus be included in the SIPD distribution. We disagree. By transferring $78.6 million to the annuity reserve from the TAA, Act 27 triggered a distribution under § 40.27(2). Secretary Gates testified that the statute leaves no discretion to hold back a portion of the annuity reserve surplus. Thus, Act 27 triggered a mandatory distribution of the $6.1 million. Furthermore, there is no statutory authority for bifurcating the annuity reserve surplus into $78.6 million and $6.1 million surpluses, with a different distribution scheme for each. We therefore conclude that Act 27 caused the pre-existing $6.1 million surplus to be included in the unconstitutional SIPD payment framework.

[22] Wis. Stat. § 893.82 provides in relevant part:

893.82 Claims against state employes; notice of claim; limitation of

. . . .

(3) Except as provided in sub. (5m), no civil action or civil proceeding may be brought against any state officer, employe or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employe's or agent's duties,. . .unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employe or agent involved. A

may serve to substantially limit the scope of remedies available to the plaintiffs.

¶ 41. Sovereign immunity exists in this State by virtue of Article IV, § 27 of the Wisconsin constitution,[23] and unless waived, generally precludes suits in which a prevailing plaintiff would be entitled to recover money from the State. *Lister v. Board of Regents*, 72 Wis. 2d 282, 292, 240 N.W.2d 610 (1976) (holding that when a judgment for plaintiffs would require payment from State funds, the State may invoke its immunity from suit). However, sovereign immunity will not bar recovery for a taking, because just compensation following a taking is a "constitutional necessity rather than a legislative dole." *Luber v. Milwaukee County*, 47 Wis. 2d 271, 277, 177 N.W.2d 380 (1970). In this sense, Article I, § 13 is a self-executing constitutional waiver of sovereign immunity. *Zinn*, 112 Wis. 2d at 436. We therefore determine that sovereign immunity does not bar the plaintiffs' claims under Article I, § 13.

¶ 42. The Administration Defendants concede, and we agree, that the plaintiffs' request for just compensation under Wis. Const. art. I, § 13 is not barred by

---

specific denial by the attorney general is not a condition precedent to bringing the civil action or civil proceeding.

. . . .

(6) The amount recoverable by any person or entity for any damages, injuries or death in any civil action or civil proceeding against a state officer, employe or agent,. . .including any such action or proceeding based on contribution or indemnification, shall not exceed $250,000. No punitive damages may be allowed or recoverable in any such action.

[23] Wis. Const. art. IV, § 27 provides:

**Suits against state.** Section 27. The legislature shall direct by law in what manner and in what courts suits may be brought against the state.

their failure to file a notice of injury prior to commencing the present action. In their concession, the Administration Defendants state:

> The takings clause is a self-executing constitutional provision. *Zinn v. State*, 112 Wis. 2d 417, 334 N.W.2d 67 (1983). While *sovereign immunity and failure to file a notice of injury* bar plaintiffs' damage claims to the extent they depend upon the non-self-executing contracts clause (art. I, § 12) and extra compensation clause (art. IV, § 26) of the Wisconsin constitution. . .they *do not preclude just compensation for a taking*. The SIPD, however, does not constitute a taking.

Petitioners' Reply Brief at 21, n. 5 (emphasis added).

¶ 43. This court has previously held that when the legislature has not provided specific procedures for the recovery of just compensation following a taking, an aggrieved property owner may proceed directly under Article I, § 13. *Zinn*, 112 Wis. 2d at 437–38; *see also, Kallembach v. State*, 129 Wis. 2d 402, 409, 385 N.W.2d 215 (Ct. App. 1986). Section § 893.82 does not set out specific procedures for the recovery of just compensation. Indeed, the section's recovery limitation of $250,000 indicates that the statute was not intended to apply in the takings context. § 893.82(6). A taking may result in the State's obligation to pay far more than $250,000, and the constitutional mandate of just compensation cannot be limited in amount by statute. *Zinn*, 112 Wis. 2d at 437, *citing Luber*, 47 Wis. 2d at 283.

¶ 44. Well-settled law supports the Administration Defendants' concession that § 893.82 does not

apply in the takings context. We therefore conclude that the plaintiffs' claim for just compensation is not barred by their failure to file a notice of injury.[24]

¶ 45. As noted, just compensation is the constitutionally prescribed remedy for a taking of the plaintiffs' property interest in the earnings of the annuity reserve account. What remains for our consideration is the appropriate method of valuing that property right.

¶ 46. Just compensation is measured by the loss incurred by the property owner as a result of the taking. *See Luber*, 47 Wis. 2d at 279, *citing Volbrecht v. State Highway Comm.*, 31 Wis. 2d 640, 647, 143 N.W.2d 429 (1966). Applying that principle to this case, we determine that just compensation is required to the extent of any diminishment of the balance of the annuity reserve caused by Act 27.

¶ 47. We agree with the court of appeals that the circuit court erred in exercising its equitable powers to order a "minimalist remedy." Inherent in the concept of just compensation is an equitable principle: if just compensation is warranted in a particular instance, it is because a property owner should not be required to bear alone an expense that in all fairness must be borne by the public. *Noranda*, 113 Wis. 2d at 624. Thus, to the extent that a court awards less than just com-

---

[24] Because we determine that § 893.82 is inapplicable in the context of the self-executing takings clause, we do not reach the plaintiffs' assertion that § 893.82 is inapplicable because their claim for monetary relief is merely "ancillary" to their request for an equitable declaration that Act 27 is unconstitutional. Accordingly, we also decline to reach the issue of whether § 893.82 applies to the plaintiffs' remaining constitutional claims.

pensation for a taking out of concern for the public purse, it has provided a constitutionally insufficient remedy. *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 322 (1987).

¶ 48. However, the court of appeals erred when it limited just compensation to the portion of SIPD payments that replaced GPR expenditures.

> Nor is the amount taken equal to the SIPD already distributed because not all distributed SIPD served to replace supplemental benefits. The SIPD distributed to some annuitants exceeded the supplemental benefits they were receiving, and that excess did not reduce GPR expenditures for supplemental benefits.

*Retired Teachers Ass'n,* 195 Wis. 2d at 1033. Just compensation is not measured by the economic benefit to the State resulting from the taking. *Luber*, 47 Wis. 2d at 279. It is the property owner's loss that Wis. Const. art. I, § 13 compensates.

¶ 49. Because all SIPD payments were made in derogation of the plaintiffs' right to have annuity reserve payments made consistent with § 40.27(2), just compensation requires that all such payments be returned to the annuity reserve. Similarly, because the reimbursement to GPR also violated § 40.27(2), the amount reimbursed must also be returned to the annuity reserve.

¶ 50. This court rejects the Administration Defendants' argument that a recovery of all payments made under Act 27 would overcompensate the plaintiffs for the taking effected by the Act. The defendants base their assertion on the fact that SIPD recipients could have received a similar distribution had the ETF

31

Board been allowed to exercise its equitable discretion. Essentially, the defendants ask this court to reduce an award of just compensation by the amount that pre–1974 annuitants would have received in the Board's discretion.

¶ 51. We decline the defendants' invitation because it is impossible to know how the ETF Board would have equitably distributed the $84.7 million annuity reserve surplus. The Board might have distributed the surplus in precisely the manner mandated by Act 27, or it might have given no portion of the surplus to any SIPD recipient. The point is, it is for the Board alone to equitably distribute any surplus in the annuity reserve. This court has neither the inclination nor the expertise to substitute its estimate of an equitable distribution for that of the ETF Board.

██

¶ 52. We therefore conclude that just compensation requires the following: 1) the Administration Defendants shall pay from the State treasury to the annuity reserve account an amount equal to all SIPD payments made out of the annuity reserve; 2) any undistributed portion of the SIPD remaining in the annuity reserve shall be unencumbered by the provisions of Act 27; 3) the ETF Board shall distribute the amount recovered and any undistributed SIPD in its equitable discretion.[25]

---

[25] The Board shall exercise its discretion to equitably vary the distribution, notwithstanding any present language in § 40.27(2) to the contrary. *See* 1995 Wis. Act 302, § 42 (amending § 40.27(2)(b)).

¶ 53. Subsumed within the concept of just compensation is the principle that interest must be awarded on the value of property from the date of the taking. "Just compensation is for property presently taken and necessarily means the property's present value, presently paid—not its present value to be paid at some future time without interest." *W.H. Pugh Coal Co. v. State*, 157 Wis. 2d 620, 633, 460 N.W.2d 787 (Ct. App. 1990), *quoting Grant v. Cronin*, 12 Wis. 2d 352, 355, 107 N.W.2d 153, 155 (1961). Thus, we conclude that the plaintiffs are owed the investment returns that would have been earned on funds from the time that they were removed from the annuity reserve.

¶ 54. We are confronted with the task of setting the appropriate interest rate. The circuit court concluded that a five percent investment earnings rate was appropriate, based upon the "assumed benefit rate." § 40.02(6). In declining to award earnings based upon the returns actually experienced by the trust fund, the circuit court reasoned that such an award would work a serious hardship on the taxpaying public. In contrast, the court of appeals determined that the trust should be reimbursed for lost investment earnings "at the average rate of earnings of the trust fund assets from the date of the first distribution of the SIPD to the date the amount taken is returned to the trust fund." *Retired Teachers Ass'n*, 195 Wis. 2d at 1033.

¶ 55. This court concludes that the plaintiffs are entitled to interest at the effective rate, as defined in § 40.02(23).[26] The effective rate is used to credit invest-

---

[26] Wis. Stat. § 40.02(23) provides:

ment earnings to the annuity reserve. *See* § 40.04(6) ("The [annuity] reserve shall be increased by investment earnings at the effective rate. . ."). As such, it is the most accurate measure of the returns that would have been earned by the annuity reserve on the funds that were unconstitutionally removed by Act 27.

¶ 56. We decline to adopt either the circuit court's or court of appeals' lost earnings formulation, because neither describes the lost annuity reserve investment returns as accurately as the effective rate. The circuit court's five percent earnings rate is insufficient because it does not measure the amount of investment returns that would have been earned had the funds remained in the annuity reserve.[27] Similarly, the average earnings rate of the trust fund from the date of the first distribution to the date of recovery does not measure the annuity reserve's lost earnings as accurately as the effective rate. The annuity reserve account accumulates investment returns at the effective rate, not by the average rate of returns

(23) "Effective rate" means:

(a) For the fixed annuity division, the rate, disregarding fractions of less than one-tenth of one percent, determined by dividing the remaining fixed annuity division investment earnings for the calendar year or part of the calendar year, after making provision for any necessary reserves and after deducting prorated interest and the administrative costs of the fixed annuity division for the year, by the fixed annuity division balance at the beginning of the calendar year as adjusted for benefit payments and refunds paid during the year excluding prorated interest.

[27] The assumed benefit rate is used "for calculating reserve transfers at the time of retirement, making actuarial valuations of annuities in force, determining the amount of lump-sum death benefits payable from the portion of an annuity based on additional deposits and crediting interest to employe required contribution accumulations." § 40.02(6).

experienced by the trust fund generally. Consistent with the argument advanced by the ETF Defendants, we conclude that effective rate is the most accurate reflection of the annuity reserve's lost earnings.

¶ 57. Finally, we note that Act 27 did not cause all surplus funds in the annuity reserve to leave in a single lump-sum payment. Rather, the funds were paid out over time. Thus, an interest award should reflect the fact that the annuity reserve has enjoyed the benefit of investment earnings on a declining sum of money. We therefore conclude that the Administration Defendants must pay, from the state treasury, interest at the effective rate on SIPD payments and the $3.8 million reimbursement from the date that those funds actually left the annuity reserve.[28]

## VI. Attorney Fees

¶ 58. The circuit court awarded attorney fees to the plaintiffs based upon its finding that the ETF Defendants breached their fiduciary duties, and that such breach rose to the level of mismanagement under Wis. Stat. § 814.14. The court of appeals reversed the finding of fiduciary breach, and instead awarded attorney fees under the "common fund" doctrine. Presently, the plaintiffs request attorney fees under either § 814.14, the common fund doctrine, or the private attorney general doctrine.

---

[28] We assume that SIPD payments left the annuity reserve periodically throughout the year. It is anticipated that the circuit court will be required to make multiple interest calculations based upon many different payment dates. Interest on the $3.8 million reimbursement must, of course, be calculated from the date of payment.

¶ 59. Initially, we acknowledge that Wisconsin has consistently adhered to the "American Rule" requiring litigants to pay their own attorney fees. Generally, a court may require a losing litigant to reimburse the prevailing party's attorney fees only when expressly authorized by statute or contract. *DeChant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 571, 547 N.W.2d 592 (1996).

¶ 60. We first consider the common fund doctrine, under which the court of appeals awarded attorney fees to the plaintiffs. This court has not previously adopted the common fund doctrine. However, the doctrine has been widely used to deal with the "free rider" problem inherent in class actions. As the United States Supreme Court has recognized, it would be unfair to allow a class to share in the benefits of an action, while forcing the litigating plaintiffs to shoulder all of the costs of the lawsuit.

> [A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. . . .The [common fund] doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted). The common fund doctrine is rooted in "the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorney's fees, from the fund or property itself or directly from the other parties

36

enjoying the benefit." *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 257 (1975).

¶ 61. In *Alyeska*, the Court set out three factors that should be present before a court adopts the common fund approach. First, those benefiting from the litigation should be small in number and easily identifiable. Second, the benefits should be traceable with some accuracy. Third, the attorney fees should be capable of being "shifted with some exactitude to those benefiting." *Id.* at 265, n. 39.

¶ 62. With these principles in mind, this court concludes that the common fund doctrine is appropriately applied in this case. By recovering funds paid from the annuity reserve under Act 27, the attorneys for SEA, WEAC, and WRTA are vindicating the property rights of all annuitants, not just those of the members of the three groups. Also, once the ETF Board equitably distributes the recovery, the benefiting annuitants may be identified with certainty and ease. Furthermore, the benefits and costs of litigation are easily apportioned among the recipient annuitants. Because the attorney fees are "taken off the top," a recipient annuitant will pay litigation costs in exact proportion to the distribution that he or she receives.

¶ 63. We reject the defendants' undeveloped assertion that an award of attorney fees under the common fund doctrine would jeopardize the tax-exempt status of the retirement system. The United States Supreme Court long ago recognized the propriety of applying the common fund doctrine in the public trust fund context:

> It is a general principle that a trust estate must bear the expenses of its administration. . . .[Where]

> one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement. . . .

*Trustees v. Greenough*, 105 U.S. 527, 532–33 (1881). More recently, the Court cited with approval its several decisions reaffirming the *Greenough* holding. *Alyeska*, 421 U.S. at 257–58. Against this backdrop of federal law endorsing the application of the common fund doctrine to trust fund asset recoveries, the defendants' unsupported assertion of impropriety is unpersuasive. We conclude instead that, as in *Greenough*, the attorney fees awarded in this case are part of the cost of administering the trust, and are therefore properly borne by the trust under the common fund doctrine.[29]

¶ 64. We further observe that the common fund doctrine is consistent with the American Rule. A losing litigant does not pay attorney fees in addition to the amount of recovery. Rather, attorney fees are deducted from the recovery. Thus, a losing litigant is no better or worse off as a result of the doctrine's application.

¶ 65. In calculating reasonable attorney fees, the circuit court shall have discretion to base its award on either a percentage of the fund recovered or the lodestar method of a reasonable hourly rate multiplied by a reasonable number of hours. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). Furthermore, in formulating

---

[29] Because we determine that the plaintiffs are entitled to attorney fees under the common fund doctrine, we do not reach the issue of whether attorney fees are recoverable under any other theory.

the award, the circuit court shall take the following factors into consideration:

> the time and labor required, the novelty and difficulty of the question presented by the case, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorneys due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, any time limitation imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation and ability or the attorney, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases.

*Gottlieb*, 43 F.3d at 482, n. 4, *citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). After deducting the reasonable attorney fees from the recovery, the circuit court shall order the balance deposited in the FRIT's annuity reserve account.

## VII. Conclusion

¶ 66. In summary, this court concludes that Act 27 takes without just compensation the plaintiffs' property interest in the proper distribution of investment earnings of the annuity reserve account. It is therefore unconstitutional beyond a reasonable doubt. We also conclude that the ETF Defendants did not breach their fiduciary duties as trustees of the WRS. Because our measure of just compensation is different from that of the court of appeals, we modify the decision of that court, and affirm that decision as modified. In addition, we remand to the circuit court with directions.

¶ 67. On remand, the circuit court is directed to enter judgment declaring that Act 27 and its imple-

mentation unconstitutionally take without just compensation the plaintiffs' property interest in the proper distribution of the earnings of the annuity reserve account. The court shall declare invalid and enjoin further implementation of the Act, and shall order the Administration Defendants to pay from the State treasury to the annuity reserve account, the following: an amount equal to all distributed SIPD payments, plus the $3.8 million reimbursement to GPR, plus interest at the effective rate on all payments from the date that the payments left the annuity reserve account.[30] The court shall further declare any portion of the $84.7 million remaining in the annuity reserve account free from the encumbrances of Act 27. The court shall calculate the plaintiffs' reasonable attorney fees, and shall order the fee award deducted from the sum repaid to the annuity reserve account. Finally, the court shall order the ETF Board to equitably distribute the balance of the recovery, including interest, plus any remaining SIPD balance in the annuity reserve account.

*By the Court.*—The decision of the court of appeals is modified, and as modified, affirmed, and the cause is remanded to the circuit court with directions.

[30] The circuit court shall have discretion to determine the mode and timing of the recovery's payment. The court must first determine what further record, if any, is necessary to arrive at its determination.