**Billy Jerome LACEY, Plaintiff,**

v.

**C.S.P. SOLANO MEDICAL STAFF, et al., Defendants.**

**No. Civ S–96–1452 LKK DAD P.**

United States District Court,
E.D. California.

Dec. 22, 1997.

Billy Jerome Lacey, Oakland, CA, pro se.

Jane L. Lamborn, Deputy Attorney General, Sacramento, CA, for defendants.

## ORDER

KARLTON, District Judge.

Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.

On October 17, 1997, the magistrate judge filed findings and recommendations herein which were served on all parties and which contained notice to all parties that any objections to the findings and recommendations were to be filed within twenty days. Defendants have filed objections to the findings and recommendations, and plaintiff has filed a reply.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72–304, this court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, the court finds the findings and recommendations to be supported by the record and by proper analysis.

Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations filed October 17, 1997, are adopted in full; and

2. Defendants' April 29, 1997 motion to dismiss is denied.

## ORDER AND FINDINGS AND RECOMMENDATIONS

DROZD, United States Magistrate Judge.

Plaintiff is a state prisoner proceeding pro se with this civil rights action seeking relief pursuant to 42 U.S.C. § 1983. Defendant Scotti's motion to dismiss is before the court.

## BACKGROUND

On April 29, 1997, the defendant filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiff did not file opposition to the motion. Accordingly, in findings and recommendations filed on June 25, 1997, the court recommended that defendant's motion be granted. After plaintiff filed timely objections to the findings and recommendations, the court granted plaintiff an extension of time to file and serve opposition to the motion to dismiss. Plaintiff has filed opposition to defendant's motion with a certificate of service on defendant's counsel. Good cause appearing, the June 25, 1997 findings and recommendations will be vacated.

In his August 25, 1997 opposition, plaintiff requests that the court "re-check [his] file in search of[his] opposition filed on 4–29–97." (Pl.'s Opp'n filed Aug. 25, 1997.) The court's records reflect that defendant's motion to dismiss was filed and served on April 29, 1997. No documents were filed in this action between the filing of defendants' motion to dismiss on April 29, 1997, and the filing of the court's findings and recommendations on June 25, 1997.

Plaintiff requests that the court provide him with copies of documents submitted in support of his opposition. Plaintiff is informed that the Clerk of the Court cannot provide parties with free copies of documents and cannot serve documents on behalf of any party. Accordingly, plaintiffs request for copies is denied.

## PLAINTIFF'S CLAIM

Plaintiff, who is incarcerated at California State Prison–Solano, filed this action on July 11, 1996, in the United States District Court for the Northern District. The action was transferred to the Eastern District by order filed on August 8, 1996.

Plaintiff's claim concerns medical care at California State Prison–Solano. In his September 24, 1996 amended complaint, plaintiff alleges that defendant Scotti told him he would be seen by an orthopedic surgeon as soon as possible after X-rays were taken of his knees, that he was not seen, and that his knees got worse. By way of relief, plaintiff requests compensation, including punitive damages, for the alleged lack of medical attention.

## DEFENDANT'S MOTION TO DISMISS

### I. The Parties' Contentions

Defendant Scotti seeks dismissal of the action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure due to plaintiff's alleged failure to exhaust administrative remedies prior to bringing the action, as required by 42 U.S.C. § 1997e.

In his amended complaint, plaintiff alleges that there is a grievance procedure available, that he filed a grievance concerning the facts relating to his civil rights complaint, and that the grievance process has not been completed. (Am.Compl. at 2.) Attached to plaintiff's opposition to defendant's motion to dismiss is a copy of an administrative grievance submitted by plaintiff on February 23, 1996, in which he states that he was injured on his job in February, 1996, and wishes to be seen as soon as possible by an orthopedic surgeon. At the informal level, a medical secretary responded on June 27, 1996, that plaintiff was scheduled to be seen again on July 12, 1996. Plaintiff bypassed the first formal level of appeal. At the second formal level, the appeal was partially granted by the Chief Medical Officer, who found that plaintiff's appeal had merit and that plaintiff had been seen on May 17, 1996.

## II. *The Statute*

The question before the court requires interpretation of the exhaustion provision in the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321–71.[1] The PLRA made several changes to the statutes governing federal proceedings in prisoner civil rights actions.[2] One of those changes is to require prisoners to exhaust available administrative remedies before bringing certain suits. Specifically, the PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a) (as amended 1996).[3]

Little case law exists illuminating application of § 1997e(a) to actions such as this, thus leading to the lengthy analysis set forth below.

## III. *The Exhaustion Doctrine and Jurisdictional Implications*

Defendant characterizes the motion to dismiss as being made pursuant to Fed.R.Civ.P. 12(b)(1). In this regard, defendant asserts that because plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a), the court lacks subject matter jurisdiction over this action. Therefore, the court must first determine whether the subject matter jurisdiction of the court is implicated by the statute.

■ A statute requiring exhaustion of administrative remedies may be jurisdictional if it is "more than a codified requirement of administrative exhaustion" and contains "sweeping, and direct" statutory language that goes beyond a requirement that only exhausted actions be brought. *Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). For example, in *Weinberger v. Salfi*, the Supreme Court found language in the Social Security Act mandating utilization of administrative procedures to be jurisdictional. That determination turned on the fact that cited portions of the federal statute in question made the administrative decision of the Secretary "binding," set forth limited procedures for judicial review, and denied the existence of any civil cause of action arising under the Social Security Act. *Weinberger*, 422 U.S. at 757 (reading 42 U.S.C. § 405(h) to dictate that "[n]o action ... shall be brought" under 28 U.S.C. § 1331).

■ In contrast, § 1997e(a), as set forth above, contains no such sweeping and direct language barring district court federal-question jurisdiction under 28 U.S.C. § 1331. Rather than proscribing the existence of a federal cause of action under the latter statute, the Civil Rights Act specifically creates a civil cause of action. *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."). Section 1997e(a) merely provides that "[n]o action shall be brought ... until such administrative remedies as are available are exhausted." This is precisely the type of language held in *Weinberger v. Salfi* not to limit feder-

---

**1.** "Although the Act states that it 'may be cited as the Prison Litigation Reform Act of 1995.'" it was passed by Congress and signed by the President in 1996. *Wright v. Morris*, 111 F.3d 414, 416 n. 1 (6th Cir.1997) (citation omitted).

**2.** The provisions of the PLRA amended 18 U.S.C. §§ 3624(b), 3626; 42 U.S.C. § 1997e; 28 U.S.C. §§ 1346(b), 1915; and 11 U.S.C. § 523(a). The Act also added provisions, including 28 U.S.C. §§ 1915A and 1932.

**3.** Prior to the enactment of the PLRA, 42 U.S.C. § 1997e provided that

in any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available..

42 U.S.C. § 1997e(a)(1) (prior to 1996 amendment).

al jurisdiction. *See Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (holding that under Title VII the filing of a timely charge with the EEOC is not a jurisdictional prerequisite to suit in federal court but rather a requirement, like a statute of limitations, that is subject to waiver, estoppel, and equitable tolling.); *cf. Sharpe v. FDIC,* 126 F.3d 1147, 1155 (9th Cir.1997) (finding the administrative exhaustion requirement imposed by FIRREA to be a jurisdictional bar in light of the broad language—"no court shall have jurisdiction"—contained in 12 U.S.C. § 1821(d)(13)(D)).

Other courts have also reached the conclusion that § 1997e does not deprive the court of jurisdiction. *See Wright v. Morris,* 111 F.3d 414, 421 (6th Cir.1997) ("Section 1997e(a), in contrast, contains neither the sweeping and direct language of [42 U.S.C.] § 405(b) nor that statute's explicit bar to district court jurisdiction."), *cert. denied,* —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997) (No. 96–1811); *see also Palomino v. Stanton,* No. C 96–2984, 1997 WL 350099, at *2 (N.D.Cal. June 17, 1997).

Thus, this court finds that, under the principles elucidated in *Weinberger v. Salfi,* 42 U.S.C. § 1997e does not impose exhaustion of administrative remedies as a prerequisite to the court's jurisdiction.[4] Accordingly, the court has subject matter jurisdiction over plaintiff's claim.

Having determined that the issue of exhaustion is not jurisdictional, the court turns to a consideration of whether plaintiff in this case has exhausted the administrative remedies that defendant contends plaintiff was required to exhaust before bringing his civil action. Several principles guide application of the exhaustion doctrine. "The doctrine of exhaustion of administrative remedies is one among related doctrines—including abstention, finality, and ripeness—that govern the timing of federal-court decisionmaking." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (citations omitted) (holding that the exhaustion of internal grievance procedures promulgated by the Federal Bureau of Prisons is not a prerequisite to a federal prisoner's initiation of a suit for damages pursuant to the authority of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)). "[E]xhaustion is 'a rule of judicial administration,' ... and unless Congress directs otherwise, rightfully subject to crafting by judges." *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 518, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), *quoted in McCarthy,* 503 U.S. at 144.

Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy,* 503 U.S. at 145. The first of these purposes reflects Congress' delegation of authority to coordinate branches of government and the notion that agencies have primary responsibility for programs that Congress has charged them to administer.[5] *See id.* This same purpose is served by allowing an agency to apply its special expertise in an area and by allowing the agency "to correct its own mistakes with respect to the program it administers" before subjecting it to litigation. *Id.* The second purpose, that of judicial efficiency, is served by an administrative process that will correct agency mistakes, focus the dispute, and produce a useful record for subsequent judicial consideration in those cases not rendered moot by the administrative process. *Id.*

"[A]ppropriate deference to Congress' power to prescribe the basic procedural

---

4. This conclusion is supported by 42 U.S.C. § 1997e(c)(1) & (2). Under these portions of the statute, the court is required to screen prisoner complaints and dismiss those that are frivolous or malicious and those that fail to state a claim or seek monetary relief from a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c)(1). More importantly for purposes of the issue before the court, the statute provides that the court may dismiss such claims without requiring the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(c)(2). The court would not be empowered to do so if the exhaus-

tion provision deprived the court of jurisdiction over the action.

5. This principle appears to have little relevance here. In enacting the PLRA Congress did not establish a grievance procedure or an administrative agency charged with authority in the area. Indeed. Congress has provided that a State's failure "to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action" under § 1997e. *See* 42 U.S.C. § 1997e(b).

scheme under which a claim may be heard in a federal court requires fashioning of exhaustion principles in a manner consistent with congressional intent and any applicable statutory scheme." *McCarthy,* 503 U.S. at 144 (citing *Patsy,* 457 U.S. at 501–02 & n. 4). Thus, " '[o]f "paramount importance" to any exhaustion inquiry is congressional intent. Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs.' " *Wang v. Reno,* 81 F.3d 808, 814 (9th Cir.1996) (quoting *McCarthy,* 503 U.S. at 144).

Finally, because federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them, exhaustion is not required under some circumstances even though administrative and judicial interests would be served by imposing the requirement. *See McCarthy,* 503 U.S. at 146 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

### IV. *Statutory Construction*

 It must next be determined whether by enacting 42 U.S.C. § 1997e(a) Congress clearly required exhaustion of the administrative procedures that are the subject of defendants' motion to dismiss. In making that determination, well-established canons of statutory construction must be employed. As always, the inquiry begins with the language of the statute itself. *See United States v. Alvarez–Sanchez,* 511 U.S. 350, 356, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994); *Jeffries v. Wood,* 114 F.3d 1484, 1495 (9th Cir. 1997) (en banc), *petition for cert. filed,* ——

U.S. ——, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997) (No. 97–289). In the absence of definition within the statute, statutory terms are to be construed in accordance with their ordinary meaning. *See Asgrow Seed Co. v. Winterboer,* 513 U.S. 179, 187, 115 S.Ct. 788, 130 L.Ed.2d 682 (1995); *United States v. Miguel,* 111 F.3d 666, 670 (9th Cir.1997).

 In addition, a statute is to be read as a whole since the meaning of statutory language depends on context. *See King v. St. Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991); *Beno v. Shalala,* 30 F.3d 1057, 1068 (9th Cir.1994). If possible, statutory language should be interpreted to provide consistent meaning throughout an entire statute. *See Gustafson v. Alloyd Co.,* 513 U.S. 561, 568, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995); *American Tunaboat Ass'n v. Brown,* 67 F.3d 1404, 1408 (9th Cir.1995). Finally, " '[t]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.' " *United States v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 1526–27, 134 L.Ed.2d 748 (1996) (quoting *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986)); *see also United States v. Texas,* 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) ("In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law.").

Here, it must be determined what administrative procedures Congress intended to include by use of the phrase "such administrative remedies as are available" in requiring exhaustion. *See* 42 U.S.C. § 1997e(a).[6] No-

---

6. Initially it may appear that the term "prison conditions" within the provision of 42 U.S.C. § 1997e(a) that "[n]o action shall be brought with respect to prison conditions under section 1983" requires in-depth examination. It could be surmised, perhaps, that Congress intended to limit application of § 1997e(a) to those cases involving ongoing, systemic prison conditions, as opposed to those seeking relief for isolated incidents of alleged unconstitutional conduct. However, in the PLRA Congress also amended 18 U.S.C. § 3626 and in doing so defined the term "civil action with respect to prison conditions" as· "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government of facials on the lives of persons confined in prison, but

does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626(g)(2) (emphasis added). Where a *statutory definition is provided,* it establishes the meaning of the term where it appears elsewhere in the same act. *See In re Perroton,* 958 F.2d 889, 893 (9th Cir.1992). Moreover, this broad definition is consistent with the meaning accorded the statutory language "prisoner petitions challenging conditions of confinement" appearing in 28 U.S.C. § 636(b)(1)(B). *See McCarthy v. Bronson,* 500 U.S. 136, 139–43, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991) (reading "conditions of confinement" for purposes of § 636(b)(1)(B) to include both

where in the PLRA did Congress provide a definition of this phrase. Thus, as with any question of statutory interpretation, the court must first determine whether there is binding authority that construes the statute. *See Newman v. Checkrite California, Inc.,* 912 F.Supp. 1354, 1364 (E.D.Cal.1995). In this instance, the court has found no binding authority construing the statutory phrase in question. The key word within the phrase appears to be "available." Accordingly, the focus must be on the ordinary meaning of that word.

In Webster's New International Dictionary "available" is defined as "capable of availing: having sufficient power or force to achieve an end," "such as may be availed of: capable of use for the accomplishment of a purpose: immediately utilizable," and "that is accessible or may be obtained: personally obtainable." *Webster's New Int'l Dictionary* 150 (3d ed.1976). With this ordinary meaning in mind, the court rums to the interpretation of 42 U.S.C. § 1997e(a) advanced by the defendant in support of the motion to dismiss.

## A. *Prison Grievance Procedures under the California Code of Regulations*

Defendant argues that under § 1997e(a), as amended, plaintiff must now exhaust the institutional administrative appeals process for prisoner complaints provided for under the California Code of Regulations prior to bringing a federal civil rights action. However, as explained below, that process is not an "available" administrative remedy within the meaning of the statute for claims like those alleged by plaintiff in this action.

■ Under regulations governing prison grievance procedures in California, state prisoners "may appeal any departmental decision, action, condition, or policy which they can reasonably demonstrate as having an adverse effect upon their welfare." Cal.Code Regs. tit. 15, § 3084.1(a). Four levels of appeal are involved. *See id.* at § 3084.5. Significantly, the grievance process does not provide for monetary relief.[7] *See id.* at §§ 3084.1–3084.7. Thus, this institutional administrative procedure is not empowered to achieve the end sought by plaintiff in this civil rights action. The procedure cannot be used to accomplish the purpose of plaintiff's civil rights action. Accordingly, it is not an "available" administrative remedy within the ordinary meaning of that word.[8]

■ This interpretation of the statute is consistent with the judicial crafting of the exhaustion doctrine to ensure that the twin purposes of protecting administrative agency authority and promoting judicial efficiency are served. Thus, it has long been recognized that an inadequate administrative remedy need not be exhausted. *See Honig v. Doe,* 484 U.S. 305, 326–27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *see also Doe v. Arizona Dep't of Educ.,* 111 F.3d 678, 681 (9th Cir. 1997) (holding that an inadequate administrative remedy need not be exhausted even in the context of a federal statutory scheme which provided a right of action only to those parties aggrieved by the decision rendered in the administrative proceedings created by the statute itself); *Dietary Supplemental Coalition, Inc. v. Sullivan,* 978 F.2d 560, 564 (9th Cir.1992), *cert. denied sub nom. Dietary Supplement Coalition, Inc. v. Shalala,* 508 U.S. 906, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993).

California's institutional grievance procedure is clearly inadequate for a claim on which, as here, plaintiff seeks the award of damages. Congress did not intend to re-

ongoing practices and specific acts of alleged misconduct).

7. The lone exception exists in appeals arising from lost or damaged personal property. *See* Cal.Code Regs. tit. 15, § 3084.7(e).

8. State administrative systems that did not provide for damages were not considered to be "available" administrative remedies for purposes of § 1997e before that statute was amended by the PLRA. *See Marsh v. Jones,* 53 F.3d 707, 710 (5th Cir.1995) ("[W]e hold that a district court cannot invoke section 1997e to require a state prisoner seeking only money damages to exhaust prison administrative remedies that do not authorize monetary relief"); *Mitchell v. Shomig,* 969 F.Supp. 487, 492 n. 4 (N.D.Ill.1997). Similarly, federal administrative systems that did not provide for damages were not considered " available" remedies for federal prisoners bringing *Bivens* actions. *See McCarthy,* 503 U.S. at 154–55; *Cooney v. Edwards,* 971 F.2d 345, 346 (9th Cir. 1992); *Pratt v. Hurley,* 79 F.3d 601, 603 (7th Cir.1996).

quire civil rights plaintiffs to exhaust such a procedure prior to commencing a federal action.[9]

### B. *The California Tort Claims Act*

Defendant next contends that the California Tort Claims Act ("CTCA") provides an additional administrative remedy that plaintiff failed to, and now must, exhaust. *See* Cal. Gov't Code § 810, et seq. The CTCA was the state legislature's immediate response to a California Supreme Court decision in 1961 abolishing the doctrine of governmental immunity from ton liability. *See Donovan v. Reinbold,* 433 F.2d 738, 741 (9th Cir.1970); *Williams v. Horvath,* 16 Cal.3d 834, 838, 129 Cal.Rptr. 453, 548 P.2d 1125 (1976). The Act in turn abolished common law based forms of tort liability of state entities and substituted a statutory system of liability and immunity along with a procedural scheme, including claims and limitations provisions, to enforce the system. *Id.* Under the Act, a state action for "money or damages" may not be maintained unless a claim has first been timely presented to the state Board of Control. *See* Cal. Gov't Code §§ 945.4, 950.2. Most importantly for purposes of defendants' motion and as addressed below, the provisions of the CTCA have never been found applicable to federal civil rights actions.

To determine whether § 1997e requires exhaustion of CTCA claims procedures as a prerequisite to a prisoner civil rights action, the court again looks to the language of the statute. As discussed above, a statute is to be read as a whole, in context, and its language should, if possible, be interpreted so as to provide consistent meaning throughout. *See Gustafson v. Alloyd Co.,* 513 U.S. at 568; *King v. St. Vincent's Hosp.,* 502 U.S. at 221. In interpreting § 1997e(a), it is noteworthy that § 1997e(b) provides that "[t]he failure of a State to adopt or adhere to an administrative *grievance* procedure shall not constitute the basis for an action under section 1997a or 1997c" of the statute. *See* 42 U.S.C.1997e(b) (emphasis added). It thus appears that

throughout § 1997e Congress is referring to institutional grievance processes and not to general state ton claims procedures.

Consideration of § 1997e as it existed prior to PLRA amendments provides context and supports this conclusion. Former § 1997e was also directed toward exhaustion of institutional grievance systems, rather than toward general state tort claims-presentation procedures:

> It is the intent of Congress that the court find such a[n exhaustion] requirement appropriate in those situations in which the action brought pursuant to 42 U.S.C. § 1983 raises issues which cannot, in reasonable probability, be resolved by the *grievance resolution system,* including cases where imminent danger to life is alleged.

H.R.Conf.Rep. No. 897, 96th Cong., 2d Sess. 15, *reprinted in* 1980 U.S.C.C.A.N. 832, 839–40 (emphasis added).

Defendant cites no authority suggesting that in amending § 1997e Congress intended to expand the category of "administrative remedies," beyond those originally encompassed by 42 U.S.C. § 1997e, to include state tort claims procedures. Rather, in amending § 1997e Congress eliminated the certification requirement that was previously required of prison grievance systems and made the exhaustion of such procedures mandatory, when available, rather than discretionary. *Compare* former 42 U.S.C. § 1997e(b) & (d) *with* present 42 U.S.C. § 1997e(b). Again, the context indicates that the administrative remedies addressed by Congress, both originally and in the PLRA, are prison grievance procedures.

■ Thus, the language of the statute, when read in context, does not express Congress' intent to require exhaustion of CTCA claims procedures before filing a civil rights action in federal coup. This absence of express congressional intent is particularly significant given that federal courts have traditionally held that such state claims-pre-

---

9. Certainly an administrative grievance procedure could be fashioned that would be "available" within the meaning of the statute, thus requiring exhaustion of that procedure prior to the filing of a prisoner § 1983 action. Such a

grievance procedure likely exists in some states already. The institutional grievance procedure currently in place in California simply does not meet that definition for the reasons set forth above.

sentation requirements, including those contained in the California Tort Claims Act, are inapplicable to federal civil rights actions.

In this regard, the Supreme Court has held that

[i]n enacting § 1983, Congress entitled those deprived of their civil rights to recover full compensation from the governmental officials responsible for those deprivations. A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability, and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law.

*Felder v. Casey*, 487 U.S. 131, 153, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). Both the federal and state courts have long applied these same principles. *See May v. Enomoto*, 633 F.2d 164, 167 (9th Cir.1980) ("This Court and the California Supreme Court have held that the California prelitigation requirements are inapplicable to civil rights actions"); *Sethy v. Alameda County Water Dist.*, 545 F.2d 1157, 1162 (9th Cir.1976) ("[W]e hold that a plaintiff seeking in federal court to vindicate a federally created right cannot be made to jump through the procedural hoops for tort-type cases that may have commended themselves to the legislative assemblies of the several states"); *Ney v. California*, 439 F.2d 1285, 1287 (9th Cir.1971) (holding that the California Tort Claims Act does not apply to a prisoner's claims under the Civil Rights Act); *Donovan*, 433 F.2d at 741–42 (observing that the state concepts of sovereign immunity which are at the root of the California Tort Claims Act are alien to the purposes served by the federal Civil Rights Act and that incorporation of such state created policies would practically constitute a repeal of the Civil Rights Act); *Willis v. Reddin*, 418 F.2d 702, 704–05 (9th Cir.1969) ("California

may not impair federally created rights or impose conditions upon them"); *Williams*, 16 Cal.3d at 842, 129 Cal.Rptr. 453, 548 P.2d 1125 (holding that the state ton claims procedure is inoperative in civil rights actions in large part because the state scheme "was conceived to strictly limit governmental liability; the federal legislation, by contrast, was designed to ensure an adequate remedy for violations of civil rights"); *City of Huntington Park v. Superior Court*, 34 Cal. App.4th 1293, 1298, 41 Cal.Rptr.2d 68 (1995) (observing that the California Supreme Court has held, and the United States Supreme Court has confirmed, that California is prohibited "from conditioning a right of action under section 1983 upon compliance with the Tort Claims Act"); *Toscano v. Los Angeles County Sheriff's Dep't*, 92 Cal.App.3d 775, 784, 155 Cal.Rptr. 146 (1979) ("[T]he claims provisions of the [California] Government Code are inoperative to an action brought under section 1983 of the federal Civil Rights Act.").

As a general rule, "[a] party contending that legislative action changed settled has the burden of showing that the legislature intended such a change." *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989). For the reasons set forth above, defendant has not met the burden in this regard.[10]

To reiterate, it is apparent that in amending 42 U.S.C. § 1997e Congress intended to make exhaustion of available prison grievance procedures mandatory rather than discretionary prior to the filing of a § 1983 action. It does not appear, however, that Congress intended to expand the scope of administrative remedies that must be exhausted prior to such a suit to include general state tort claims act schemes in the face of long established precedent to the contrary. Defendant has not demonstrated that § 1997e requires California prisoners to file

---

**10.** As indicated by the cases noted above, were § 1997e interpreted so as to require exhaustion of CTCA procedures as a prerequisite to the filing of a civil rights action by a prisoner under 42 U.S.C. § 1983, considerable tension between the statutes would obviously emerge. The construction of § 1997e adopted above harmonizes the two statutes and gives each meaning and effect consistent with their expressed purposes. Absent

a clearly expressed congressional intention to the contrary, it is the duty of the courts to give effect to both statutes. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); *see also* 2B Norman J. Singer, Sutherland on Statutes and Statutory Construction § 53.01 (5th ed.1992).

claims with the state Board of Control in order to exhaust available administrative remedies. In the absence of clear congressional intent to make such provisions applicable to prisoner suits brought under 42 U.S.C. § 1983, that requirement cannot be imposed.[11]

## V. *Conclusion*

The court finds that the instant action is one for damages arising from past events and conditions that are alleged to have caused injury to plaintiff. Plaintiff has not requested injunctive relief. In the absence of a provision for damages, the court finds that the institutional grievance procedures set forth in the California Code of Regulations do not constitute available administrative remedies that plaintiff was required to exhaust before bringing this action for declaratory relief and damages. Under the circumstances of this case, exhaustion of these procedures would neither protect administrative agency authority nor promote judicial efficiency. Similarly, in the absence of clear congressional intent to expand the scope of administrative remedies to include state tort claims provisions, the court finds that plaintiff was not required to present a claim to the California State Board of Control before bringing this action. For these reasons, the court will recommend that defendant's motion be denied.

Accordingly, IT IS HEREBY ORDERED that the court's June 25, 1997 findings and recommendations are vacated; and

IT IS HEREBY RECOMMENDED that defendant's April 29, 1997 motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure be denied.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

October 17, 1997.

---

11. The court's conclusion in this regard is further supported by the fact that requiring a prisoner to exhaust the state tort claims act scheme would not further "the twin purposes" cited in *McCarthy,* i.e., protecting administrative agency authority and promoting judicial efficiency. *See McCarthy,* 503 U.S. at 145. The State Board of Control rejects claims that raise "complex issues of fact and law that are not easily resolved without formal legal action." *See Pfeiffer v. Newland,* Case No. CIV S–97–0370 (E.D.Cal.) (Pl.'s Mot. Oppose Defs.' Opp'n to Pl.'s Mot. for Default J., Ex. A, filed Aug. 15, 1997). The court may take

judicial notice of its own records. *See United States v. Wilson,* 631 F.2d 118, 119 (9th Cir. 1980). The Board's rejection of claims that present complex factual and legal issues demonstrates that exhaustion of California ton claims procedures would not serve to protect the Board's authority or "produce a useful record for subsequent judicial consideration." *Wright,* 111 F.3d at 421 (quoting *McCarthy,* 503 U.S. at 145). Thus, requiring exhaustion of tort claims procedures would at best lighten the court's docket temporarily without promoting judicial efficiency.