**Jamie BLAS, Plaintiff,**

v.

**Jeffrey ENDICOTT, Richard Schnieder, Capt. Tim Douma, Lt. Karen Radtke, Co. Pulver, Colleen James, Defendants.**

No. 97–C–1109.

United States District Court,
E.D. Wisconsin.

Jan. 4, 1999.

Jamie Blas, Portage, WI, plaintiff pro se.

James E. Doyle, Jr., John J. Glinski, Wisconsin Department of Justice, Office of the Attorney General, Madison, WI, for defendants.

## DECISION AND ORDER

RANDA, District Judge.

This prisoner civil rights action comes before the Court on defendants' motion to dismiss. For the following reasons, the motion is denied.

### I

Defendant relies upon the mandatory exhaustion requirement instituted by the recent Prison Litigation Reform Act ("PLRA") and codified at 42 U.S.C.A. § 1997e(a) (Supp. 1998). The provision reads as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In relying upon this requirement, defendant does not claim plaintiff failed to exhaust the grievance procedures provided by Wisconsin's correctional system. Rather, defendant claims plaintiff failed to file a notice of claim with the state attorney general, as required by Wis.Stat. § 893.82 for all claims asserted against state employees. Defendant, unfortunately, cites to nothing but the statute in support of its position. Nevertheless, the

Court, based upon its own research, does not believe the statutory provision, and the notice procedure contemplated therein, qualifies as an "administrative remedy" for purposes of § 1997e(a)'s exhaustion requirement.

First, the Court's understanding of the phrase "administrative remedy," at least for exhaustion purposes, does not encompass procedural mechanisms designed to facilitate possible settlement. That is, the concept of an "administrative remedy" implies formal proceedings whereby a prisoner may seek recourse from a relatively disinterested decision-maker who possesses the authority to issue a definitive judgment, one that is binding upon the parties (subject to appellate review, of course) precisely because it emanates from a third-party with jurisdiction over them. The notice-of-claim procedure contained in § 893.82 is not such a remedy. The notice is served upon the attorney general, the state's legal representative, and only for purposes of encouraging a possible settlement, not to facilitate a neutral and binding judgment. Even if the attorney general finds the prisoner's claim meritorious, he or she has no power to order specific, binding relief. Rather, all he or she can do is attempt to settle the matter without litigation, and the prisoner is not required to accept what the attorney general offers. While voluntary settlement of a claim is a "remedy" in a very broad sense of the term, it does not strike the Court as an "administrative remedy" as that term is used by courts and legislators in the exhaustion context. The possibility of settlement with the State, which exists with respect to every prisoner civil rights claim, has never been regarded as a potential administrative remedy that must be exhausted prior to filing suit. The fact that a State enacts a formal mechanism designed to encourage such settlements does not alter the underlying distinction between a voluntary settlement and an administrative remedy.

Second, the only federal courts considering the issue post-PLRA conclude that the legislative history of the exhaustion requirement (legislative history which is both pre- and post-PLRA) "seems to indicate that the

drafters did not intend to require prisoners to exhaust state tort remedies before filing a federal civil rights claim. It implies that Congress merely intended to require exhaustion of prison grievance procedures." *Barry v. Ratelle*, 985 F.Supp. 1235, 1238 (S.D.Cal. 1997); *see also, Lacey v. C.S.P. Solano Medical Staff*, 990 F.Supp. 1199, 1206–07 (E.D.Cal.1997). These decisions support the notion that the notice-of-claim procedure contained in § 893.82 is not an "administrative remedy" for exhaustion purposes, and the Court is persuaded by the same.

## II

While the Court denies the motion to dismiss for the above reasons, it merits noting that there is support for the argument that the notice-of-claim procedure provided in § 893.82 must be exhausted before a prisoner may bring suit in federal court under § 1983. The strongest argument comes from the United States Supreme Court's decision in *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). *Felder*, a non-prisoner case,[1] stands for the proposition that litigants suing a state employee under § 1983 need not comply with Wisconsin's notice-of-claim procedure. At first blush, that proposition seems to compel the Court's decision today, but a closer review yields a plausible contrary interpretation. That is, one must consider why the Supreme Court decided *Felder* as it did.

First, in support of its position, the Supreme Court characterized the notice provision as an "exhaustion requirement," implying that the relief it may provide by way of settlement qualifies as an "administrative remedy" for exhaustion purposes. *Felder*, 487 U.S. at 146–47, 108 S.Ct. at 2311. This undercuts the first prong of the Court's reasoning herein.

Second, after denominating the notice provision as an exhaustion requirement, the Supreme Court cited its prior decision in *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), another non-prisoner case, for the proposition "that plaintiffs need not exhaust state admin-

---

**1.** Felder was an arrestee challenging the conduct and motivation of police during his arrest, not an inmate challenging the conditions or consequences of his confinement.

istrative remedies before instituting § 1983 suits in federal court."[2] *Id.* The Supreme Court noted—in both *Felder* and *Patsy*—that the non-exhaustion rule was supported by the Civil Rights of Institutionalized Persons Act of 1980, which created the predecessor version of § 1997e(a) and imposed an exhaustion requirement for a very narrow class of cases, *i.e.*, prisoner actions under § 1983.[3] *Id.*, 487 at 148–49, 108 S.Ct. at 2312. The Supreme Court reasoned that, if Congress felt it necessary to create an express exhaustion requirement for prisoner cases, Congress "expressly recognized that it was working a change in the law," *i.e.*, that, generally speaking, there was no exhaustion requirement for 1983 cases. *Id.* Thus, because there was no exhaustion requirement for 1983 cases generally, the notice-of-claim statute did not apply to Felder. The reasonable flip-side of *Felder* is that where exhaustion *is required*—as in prisoner cases, the express exception created by Congress and confirmed by the Supreme Court in *Patsy* and *Felder*—then the notice provision applies.

2. The latter proposition, the Supreme Court noted, was supported in part by the legislative history of § 1983, which was enacted primarily to provide a federal forum in Southern States for plaintiffs alleging civil rights deprivations, *i.e.*, why require a Southern civil rights plaintiff to first seek relief from the very authorities whose hostility and intransigence created the need for a federal action in the first place. *Id.*

3. The prior exhaustion requirement was much less stringent than the current requirement imposed by the PLRA. First, applying the requirement was discretionary with the court, which could ignore the same "in the interests of justice;" exhaustion is now mandatory under the PLRA. Second, a failure to exhaust did not authorize dismissal, it only allowed the court to continue the case for a period of time to allow exhaustion where an administrative remedy was "plain, speedy, and effective...." Under the PLRA, dismissal (without prejudice) seems to be the presumptive sanction. Third, exhaustion was never required unless the United States Attorney General certified, or the court itself determined, that the administrative remedies provided by a given State were in substantial compliance with certain minimum standards contained in the statute. The PLRA dropped the certification requirement and contains no express standards for state administrative remedies. Compare, 42 U.S.C.A. § 1997e(a) (1994) and 42 U.S.C.A. § 1997e(a) (Supp.1998).

4. *See eg.*, 141 Cong.Rec. S7498–01 at S7524 (remarks of Senator Dole) ("Over the past two

The legislative history of the PLRA, as well as congressional comments concerning the PLRA after its passage, also provide support for the foregoing notion. That is, it is beyond dispute that the primary purpose of the PLRA, and the exhaustion provisions in particular, was to reduce the inordinately large volume of prisoner cases being filed in the federal courts.[4] Clearly, giving State authorities the first crack at resolving a particular prisoner's claim for relief serves this laudable goal. The problem is, the vast majority of prisoner suits seek monetary relief as a primary remedy, and it appears prison grievance procedures, including those in Wisconsin, do not provide any form of relief other than declaratory or injunctive relief. If prison grievance procedures cannot provide the monetary relief a prisoner seeks, then it would appear that the only way State authorities can have the "first crack" at resolving such a claim—which, after all, is the principal purpose of the exhaustion provision—is to require compliance with statutory notice-of-claim procedures like the one at issue here.[5]

decades, we have witnessed an alarming explosion in the number of lawsuits filed by State and Federal prisoners."); 141 Cong.Rec. S7498–01 at S7526–27 (remarks of Senator Kyl) ("Statistics ... show that inmate suits are clogging the courts and draining precious judicial resources.... The volume of prisoner litigation represents a large burden on the judicial system, which is already overburdened by increases in nonprisoner litigation.... An exhaustion requirement is appropriate for prisoners given the burden that their cases place on the Federal court system,...."); 144 Cong.Rec. S7574–08 at S7577 (remarks of Senator Thurmond) ("It is noteworthy that a primary purpose of the Prison Litigation Reform Act was ... to reduce the burdens of prison litigation."); 144 Cong.Rec. S547–02 at S548 (remarks of Senator Grassley) ("Both the Antiterrorism and Effective Death Penalty Act and the Prison Litigation Reform Act 'streamlined' procedures so as to decrease the number of potential federal court filings."); 142 Cong.Rec. S10576–02 at S10576 (remarks of Senator Abraham) ("... the Prison Litigation Reform Act, a carefully crafted set of provisions designed to stem the tide of prison litigation."); 142 Cong.Rec. S2285–02 at S2297 (testimony of John Schmidt) (noting that the exhaustion provisions were one of "three sets of reforms that are intended to curb abuses or perceived excesses in prisoner litigation....").

5. Indeed, the unavailability of monetary relief through prison grievance procedures has been

Despite the foregoing, the Court is not inclined at this juncture to apply the notice-of-claim provision at issue to prisoner suits under the auspices of § 1997e(a). The issue is close, but the Court concludes the prudent approach at this time is to reject defendant's position until there is more support, which could come from the Supreme Court, the 7th Circuit, a clear trend outside this jurisdiction, or an amendment of the law by Congress.

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Defendants' motion to dismiss is denied;

2. Discovery in this matter shall be concluded on or before March 1, 1999;

3. Further dispositive motions in this matter shall be filed on or before April 1, 1999; and

4. If no dispositive motions are filed by the above date, or if those filed are denied, the matter will be scheduled for a prompt trial.

**SO ORDERED.**

seized upon by some federal courts as a means of negating the exhaustion requirement, relying upon the statutory language requiring exhaustion of administrative remedies "as are available." See, Lacey, 990 F.Supp. at 1205; see also, White v. Fauver, 19 F.Supp.2d 305, 317 (D.N.J.1998) and cases cited therein. Other federal courts disagree with this approach, and it is fair to say that a split is developing on the issue, see, Moore v. CO2 Smith, 18 F.Supp.2d 1360, 1363–64 (N.D.Ga.1998) and Spence v. Mendoza, 993 F.Supp. 785, 787–88 (E.D.Cal.1998), although these latter courts are clearly in the minority.

The Court need not address the issue here, but it will note that interpreting the exhaustion requirement in the manner advocated by the majority position would appear to gut the exhaustion requirement of any practical application and undo the clear intentions of Congress. In any event, to the extent the majority position prevails, it would seem all the more logical and necessary to require prisoners to exhaust State notice provisions like the one at issue here, so that the State has an opportunity to address the prisoner's request for monetary relief before a federal lawsuit is filed.