STATE of Wisconsin EX REL. William N. LEDFORD, Petitioner,

v.

CIRCUIT COURT FOR DANE COUNTY and the Honorable Richard J. Callaway, presiding, Respondents.

Court of Appeals

*No. 99–0939–W. Submitted on a petition April 9, 1999.—Decided June 10, 1999.*

(Also reported in 599 N.W.2d 45.)

On behalf of the petitioner, the cause was submitted on the petition of *William N. Ledford, pro se* of Green Bay.

On behalf of the respondent, the cause was submitted on the response of *James E. Doyle*, attorney general, and *Charles D. Hoornstra*, assistant attorney general.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

DYKMAN, P.J. William N. Ledford petitions this court for a supervisory writ directing the circuit court of Dane County, the Honorable Richard J. Callaway presiding, to grant his petition to waive the fees and costs associated with his 42 U.S.C. § 1983 claim. The circuit court denied Ledford's petition after concluding that he failed to exhaust his administrative remedies

by not filing a notice of claim under § 893.82, STATS.[1] Ledford argues that while the statutory notice-of-claim procedures may result in settlement, they do not qualify as an "administrative remedy" under 42 U.S.C. § 1997e(a). He therefore requests that we grant his petition for a writ allowing him to proceed with his federal claim without pre-payment of fees and costs. We conclude that the notice-of-claim procedures do not qualify as an administrative remedy and remand for the circuit court to determine whether Ledford is indigent and whether his claim is arguably meritorious. Because we grant relief on this issue, we need not address Ledford's remaining arguments.

## BACKGROUND

Ledford, an inmate at the Columbia Correctional Institution, filed a summons and complaint under 42 U.S.C. § 1983, challenging WIS. ADM. CODE §§ DOC 309.02(14) and (16), which ban all materials depicting "nudity" or "pornography." He requested declaratory, injunctive and monetary relief. In addition to filing his summons and complaint, Ledford filed a petition for waiver of fees and costs and an affidavit of indigency, along with various supporting documents. Ledford made no claims under state law.[2]

---

[1] The State contends that § 893.82, STATS., is a notice-of-injury statute, not a notice-of-claim statute. The case law is unclear. *See Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 27, 558 N.W.2d 83, 94 (1997) (referring to § 893.82 as "notice of injury" statute); *Miller v. Mauston Sch. Dist.*, 222 Wis. 2d 540, 548–49, 588 N.W.2d 305, 309 (Ct. App. 1998) (referring to § 893.82 as a "notice of claim" statute). We will refer to it as a notice-of-claim statute.

[2] Prisoner claims under Wisconsin law are subject to § 801.02(7), STATS.

The circuit court denied Ledford's petition because it found that he failed to exhaust all available administrative remedies by not filing a notice of claim under § 893.82, STATS.[3] Ledford moved for reconsideration, arguing that the notice-of-claim statute was not an administrative remedy that he needed to exhaust in order to proceed with his claim. He also contended that even if he were required to file a notice of claim, his failure to do so would only affect his request for monetary relief, not his request for declaratory and injunctive relief. Finally, he argued that exhaustion was not required, because none of the remedies he requested were available through the inmate complaint review system (ICRS) or the attorney general's office. The circuit court denied the motion. Ledford appeals.

### DISCUSSION

### A. *Standard of Review*

The dispositive issue is whether the notice of claim procedures set out in § 893.82, STATS., provide an administrative remedy that must be exhausted before a prisoner may file a 42 U.S.C. § 1983 claim in state court.[4] The State contends that § 893.82 qualifies as an

---

[3] The State does not argue that Ledford failed to exhaust his administrative remedies under the prison grievance procedure. The Wisconsin Administrative Code establishes an inmate complaint review system (ICRS), which affords inmates "a process by which grievances may be expeditiously raised, investigated, and decided." WIS. ADMIN. CODE § DOC 310.01(1). The grievance review process is explained in WIS. ADMIN. CODE §§ DOC 310.09–310.14.

[4] Under the exhaustion requirement, judicial relief will be denied until the parties have exhausted their administrative

administrative remedy because it provides the state attorney general with an opportunity to effect a compromise without a civil action or proceeding. *See* § 893.82(1)(b). Ledford disagrees.

The denial of a prisoner's petition to waive payment of fees and costs may be reviewed under our supervisory writ procedure. *See State ex rel. Hansen v. Circuit Court*, 181 Wis. 2d 993, 513 N.W.2d 139 (Ct. App. 1994). The issue of whether the procedures outlined in § 893.82, STATS., qualify as an administrative remedy presents a question of law that we review de novo. *See State ex rel. Richards v. Circuit Court*, 165 Wis. 2d 551, 554, 478 N.W.2d 29, 30 (Ct. App. 1991).

### B. *Development of the Law*

In *Patsy v. Board of Regents*, 457 U.S. 496 (1982), the United States Supreme Court was confronted with a 42 U.S.C. § 1983 claim by a plaintiff who allegedly was denied a job because of her race and sex. Her claim was dismissed below because she allegedly failed to exhaust available administrative remedies. The Supreme Court reversed.

---

remedies. In *Nodell Inv. Corp. v. City of Glendale*, 78 Wis. 2d 416, 424, 254 N.W.2d 310, 315 (1977), the supreme court discussed the exhaustion requirement:

> The rule of exhaustion of administrative remedies is a doctrine of judicial restraint which the legislature and the courts have evolved in drawing the boundary line between administrative and judicial spheres of activity. The premise of the exhaustion rule is that the administrative remedy (1) is available to the party on his initiative, (2) relatively rapidly, and (3) will protect the party's claim of right. The reasons for the rule requiring exhaustion are essentially the same as those for the rule that appeals may be taken only from a final judgment of a trial court.

*Id.* (footnotes omitted).

The Court noted that the purpose of § 1983,[5] was "to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." *Id.* at 503 (quoting *Mitchum v. Foster*, 407 U.S. 225, 242 (1972)). While the Court noted that Congress did not discuss an exhaustion requirement, it concluded that one was not intended. See *id.* at 502–03. Its conclusion was based on the historical evidence that: (1) Congress wanted individuals who had been threatened with, or who had suffered the deprivation of constitutional rights, to have immediate access to the federal courts notwithstanding any contrary state law; (2) Congress distrusted certain state authorities, believing that they were unwilling or unable to protect the constitutional rights of individuals or to punish those who violated such rights; and (3) Congress intended the law to provide dual or concurrent forums in the state and the federal system, so that a plaintiff could chose the forum in which to seek relief. *See id.* at 504–06.

The Court, however, recognized that Congress adopted an exception to this non-exhaustion principle

---

[5] Title 42, Section 1983 of the United States Code states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

with its passage of the Civil Rights of Institutionalized Persons Act of 1980 (CRIPA), 42 U.S.C. § 1997. *See Patsy*, 457 U.S. at 508.[6]

The Court accepted that § 1997e "carves out a narrow exception to the general no-exhaustion rule to govern certain prisoner claims, and establishes a procedure to ensure that the administrative remedies are adequate and effective." *Id.* at 510. The Court, however, was unwilling to expand upon this exception or apply it to non-prisoner cases. *See id.* at 510–11.

Six years later, the United States Supreme Court decided *Felder v. Casey*, 487 U.S. 131 (1988), which involved a challenge to Wisconsin's notice-of-claim statute. Under the notice-of-claim statute, a plaintiff intending to bring suit against a state or local governmental entity or its officers is required to notify the government defendant of his or her alleged injury, the circumstances surrounding the injury, the damage amount, and his or her intent to hold the named person(s) or entity liable. The plaintiff then must give that defendant 120 days to grant or disallow the claim before filing suit. Felder, who allegedly was beaten by

---

[6] Until recently, § 1997e(a), read as follows:

(1) Subject to the provisions of paragraph (2), in any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

(2) The exhaustion of administrative remedies under paragraph (1) may not be required unless the Attorney General has certified or the court has determined that such administrative remedies are in substantial compliance with the minimum acceptable standards promulgated under subsection (b) of this section or are otherwise fair and effective.

police after his arrest, brought a § 1983 claim in state court without first filing a notice of claim. Our supreme court dismissed.

The United States Supreme Court reversed, holding that because the notice-of-claim statute conflicts with the remedial objectives of § 1983, and will frequently and predictably produce different outcomes in § 1983 litigation based on whether the claim is brought in state or federal court, it is pre-empted when the ·§ 1983 action is brought in state court. *See id.* at 138.

The majority pointed out that the purpose of § 1983 is to provide compensation to those deprived of their federal rights by state actors, and that Wisconsin's notice-of-claim statute undermines this purpose in the following ways. First, it conditions the federal remedy to minimize governmental liability, which runs contrary to the purposes of § 1983. *See id.* at 141. Moreover, the statute is not a neutral and uniformly applied procedural requirement, but rather a substantive burden only imposed upon those seeking redress for injuries caused by the use or misuse of governmental authority. *See id.* Second, the notice provision discriminates against the federal right because it only provides a civil rights victim four months to appreciate that he or she has been deprived of a constitutional or statutory right, while a victim of an intentional tort has two years to recognize his or her injury. *See id.* at 141–142. Third, the notice provision operates in part as an exhaustion requirement that forces claimants to seek satisfaction in the first instance from the governmental defendant. *See id.* at 142.

In the majority's discussion of this third factor, it concluded that given the purpose of the federal civil rights legislation, there is no reason to believe that Congress intended to provide individuals with immedi-

ate access to the federal courts notwithstanding any state law to the contrary, yet still require them to seek redress in the first instance from the very state officials whose actions or inactions caused their injuries. *See id.* at 147. The Court said:

> The dominant characteristic of a § 1983 action, of course, does not vary depending upon whether it is litigated in state or federal court, and States therefore may not adulterate or dilute the predominant feature of the federal right by imposing mandatory settlement periods, no matter how reasonable the administrative waiting period or the interests it is designed to serve may appear.

*Id.* at 148.

The Court again distinguished between § 1983 claims brought by prisoners and those brought by nonprisoners. While it recognized that Congress "work[ed] a change in the law" when it enacted the CRIPA, it refused to impose an exhaustion requirement in nonprisoner actions when there is no evidence that Congress intended one. *Id.* at 148–49.

## C. *Prison Litigation Reform Act*

In 1996, Congress substantially amended CRIPA when it passed the Prison Litigation Reform Act (PLRA), Pub. L. No. 104–134, § 803, 110 Stat. 1321 (1996), codified in 42 U.S.C. § 1997e. The most significant change is that the PLRA made the exhaustion provisions of § 1997e(a) mandatory, rather than directory. *See Garrett v. Hawk*, 127 F.3d 1263 (10th Cir. 1997); *Morgan v. Arizona Dept. of Corrections*, 976 F. Supp. 892, 894 (D. Ariz. 1997); *Mitchell v. Shomig*, 969

F. Supp. 487, 491 (N.D. Ill. 1997).[7] Section 1997e(a), as amended, reads:

> No action shall be brought with respect to prison conditions under section 1983 or this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

If a prisoner fails to exhaust all available administrative remedies, the court is required to dismiss his or her complaint. *See Jones v. Detella*, 12 F. Supp. 2d 824, 826 (N.D. Ill. 1998). The circuit court in this case denied Ledford's petition because he failed to file a notice of claim with the state attorney general.

---

[7] In *Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir. 1998), the court commented on Congress's rationale for enacting the PLRA:

> Congress enacted this mandatory exhaustion requirement in § 1997e(a) as part of the PLRA's effort to curtail frivolous and abusive prisoner litigation. *See, e.g., Rivera v. Allin*, 144 F.3d 719, 727–28 (11th Cir.1998). As this Court observed in *Rivera*, "Congress did not enact the PLRA in a vacuum. It held hearings and rendered findings, concluding that prisoners file more frivolous lawsuits than any other class of persons." *Id.* at 728. Congress found that the number of prisoner lawsuits "has grown astronomically—from 6,600 in 1975 to more than 39,000 in 1994." 141 Cong. Rec. S14408–01, *S14413 (daily ed. Sept. 27, 1995). Indeed, by 1995 more than twenty-five percent of the suits filed in federal district court were brought by prisoners. *Roller v. Gunn*, 107 F.3d 227, 230 (4th Cir. 1997) (citing Administrative Office of the United States Courts, 1995 Federal Court Management Statistics 167). Congress intended section 1997e(a) to "curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court." 141 Cong. Rec. H1472–06, H1480 (daily ed. Feb. 9, 1995).

## D. *Cases Under PLRA*

Wisconsin's notice-of-claim statute was recently considered in *Blas v. Endicott*, 31 F. Supp. 2d 1131 (E.D. Wis. 1999). In *Blas*, the district court concluded that:

> the concept of an "administrative remedy" implies formal proceedings whereby a prisoner may seek recourse from a relatively disinterested decisionmaker who possesses the authority to issue a definitive judgment, one that is binding upon the parties (subject to appellate review, of course) precisely because it emanates from a third-party with jurisdiction over them. The notice-of-claim procedure contained in § 893.82 is not such a remedy. The notice is served upon the attorney general, the state's legal representative, and only for the purposes of encouraging a possible settlement, not to facilitate a neutral and binding judgment. Even if the attorney general finds the prisoner's claim meritorious, he or she has no power to order specific, binding relief. Rather, all he or she can do is attempt to settle the matter without litigation, and the prisoner is not required to accept what the attorney general offers. While voluntary settlement of a claim is a "remedy" in a very broad sense of the term, it does not strike the Court as an "administrative remedy" as that term is used by courts and the legislators in the exhaustion context.

*Id.* at 1132. We too conclude that settlement negotiations, however fruitful they may be, are not an administrative remedy. We conclude that an administrative remedy requires a decision from a neutral third-party after he or she has considered the relevant facts and circumstances. We note that the prison grievance procedures outlined in WIS. ADM. CODE CH. DOC

310 satisfy this requirement. The notice-of-claim procedure, on the other hand, does not.

The *Blas* court's conclusion is supported by *Barry v. Ratelle*, 985 F. Supp. 1235, 1238 (S.D. Cal. 1997) and *Lacey v. C.S.P. Solano Med. Staff*, 990 F. Supp. 1199, 1206–07 (E.D. Cal. 1997). In *Barry*, the court held that a prisoner who proceeded through every level of the prison grievance system was not required to exhaust the presentment-of-claim procedures set out under the California Tort Claims Act in order to continue on with his § 1983 action. *Barry*, 985 F. Supp. at 1238. The court stated that "[t]he legislative history of section 1997e(a), as amended by the PLRA, seems to indicate that the drafters did not intend to require prisoners to exhaust state tort remedies before filing a federal civil rights claim. It implies that Congress merely intended to require exhaustion of prison grievance procedures." *Id.*[8] The court stated that "[t]here is no indication in the legislative history surrounding the PLRA to suggest that Congress intended to legislatively overrule *Felder v. Casey*, . . . which held that state law notice-of-claim statutes are inapplicable to § 1983 litigation." *Id.* It therefore concluded that notice-of-claim statutes

---

[8] The court in *Barry v. Ratelle*, 985 F. Supp. 1235, 1238 (1998), also refers to the *Report on the Activities of the Committee on the Judiciary*, H.R. REP. NO. 104–879 at 183 (1997), which states that the PLRA "requires prisoners to exhaust the administrative remedies established by the corrections system before they may file a lawsuit in federal court." The court also cites to remarks made by Senator Kyl, one of the bill's sponsors, in which he stated that "[m]any prisoner cases seek relief for matters that are relatively minor and for which *the prison grievance system* would provide an adequate remedy." 141 CONG. REC. S7498–01, S7527 (daily ed. May 25, 1995) (emphasis added).

need not be exhausted in order for a prisoner to exhaust his or her administrative remedies. *See id.*

In *Lacey*, another federal district court concluded that a prisoner was not required to file a notice of claim under the California Tort Claims Act in order to exhaust his administrative remedies. *Lacey*, 990 F. Supp at 1206. The court stated that it was evident that Congress amended 42 U.S.C. § 1997e to require prisoners to exhaust available prison grievance procedures before filing a § 1983 action, but it was not evident that Congress intended to expand the scope of administrative remedies that must be exhausted to include state tort notification procedures. *See id.* at 1207.

The *Blas* court, however, expressed concern that *Felder* could be read as holding that the notice-of-claim procedure outlined in § 893.82, STATS., qualifies as an administrative remedy. *Blas*, 31 F. Supp. 2d at 1132–33. Specifically, the court pointed to the language in which the Supreme Court characterized the notice of claim requirement as an "exhaustion requirement," implying that the relief such a claim could provide through settlement was an administrative remedy for exhaustion purposes. *See id.* at 1132 (quoting *Felder*, 487 U.S. at 146–47). However, despite its concern over this language, the *Blas* court ultimately concluded that the notice-of-claim procedures did not qualify as an administrative remedy.

Although we agree with the *Blas* court's reasoning, we do not share its concern that *Felder* implies that the notice-of-claim procedures are an administrative remedy for exhaustion purposes. The Supreme Court called the notice procedure an "exhaustion requirement" and an "administrative waiting period," but not an "administrative remedy." And even had it called the procedure an administrative remedy, such a determination is not

controlling here, because the plaintiff in *Felder* was not a prisoner subject to CRIPA. In its decisions in *Patsy* and *Felder*, the Court recognized that there was a distinction between prisoner § 1983 litigation and non-prisoner § 1983 litigation, and that Congress created exhaustion requirements that applied to the former but not the latter. In light of the Court's obvious desire to separate the two, we conclude that it would be inappropriate to take the Court's conclusions out of context and apply them to this case.[9]

Moreover, because Congress created an exception when it adopted § 1997e(a), and we have a history of interpreting exceptions narrowly, *see generally Erdman v. Jovoco, Inc.*, 181 Wis. 2d 736, 764, 512 N.W.2d 487, 497 (1994); *Morrisette v. DeZonia*, 63 Wis. 2d 429, 440, 217 N.W.2d 377, 383 (1974), we conclude that the notice-of-claim procedures do not qualify as an administrative remedy for exhaustion purposes.

### CONCLUSION

Accordingly, we grant the petition for a supervisory writ and order the circuit court to determine whether Ledford is indigent and whether his claim has arguable merit. *See Hansen*, 181 Wis. 2d at 997–98, 513 N.W.2d at 141. From the answers to those ques-

---

[9] The district court in *Plasencia v. California*, 29 F. Supp. 2d 1145, 1148–49 (C.D. Cal. 1998), addressed this issue of whether the *Felder* court implied that Wisconsin's notice-of-claim statute was an administrative remedy. It regarded the language in question as dicta, and determined that the Court discussed the exhaustion requirements in § 1997e only to show that Congress was aware that exhaustion of administrative claims was generally not a prerequisite to commencing a § 1983 action. *See Plascencia*, 29 F. Supp. 2d at 1148.

tions the court will determine whether Ledford is entitled to file his § 1983 action without the payment of costs and fees.

*By the Court.*—Writ granted.