PER CURIAM.
¶ 1 This appeal involves a dispute between Douglas Larson and FLS, LLP (collectively, "Larson"), a Sunset Condominiums owner, and the Sunset Condominiums at Northern Bay Owners Association (the Owners Association). Larson seeks reimbursement from the Owners Association for the cost of litigation that Larson contends benefited all Sunset Condominiums owners. The litigation involved Larson commencing an action to establish that Sunset Condominiums owners were the owners of a sewer system that is used by Sunset Condominiums after two neighboring businesses claimed ownership. Following protracted litigation, including a prior appeal, see Larson v. Castle at the Bay, LLC , No. 2014AP895, unpublished slip op. ¶ 1 (WI App Dec. 11, 2014), Larson prevailed and obtained a declaration that Sunset Condominiums owners are the exclusive owners of the sewer system. Larson then moved for an order directing the Owners Association to reimburse him for litigation costs. The circuit court denied that request, and Larson appeals. We affirm the circuit court.
Background
¶ 2 Prior to 2013, a sewer system serving Sunset Condominiums and at least two neighboring developments, Castle at the Bay and Timber Shores, was treated as if it was a common element of Sunset Condominiums. In 2013, the president of Castle at the Bay asserted that Castle at the Bay owned a portion of the sewer system and that Castle at the Bay would charge the Owners Association a fee for use of the sewer system.[1] Larson and the Owners Association disagreed with each other as to how to handle the claimed ownership and planned usage charges. Broadly speaking, the Owners Association wanted to resolve the matter without litigation by agreeing to shared ownership and payment by the Association to Castle at the Bay. Larson disagreed with this approach. Larson unsuccessfully attempted to persuade the Owners Association to litigate the issue. When Larson failed to persuade the Association, he commenced an action on his own to establish that the Sunset Condominiums owners are the sole owners of the sewer system.
¶ 3 Larson eventually obtained a declaration that the sewer system is owned by the Sunset Condominiums owners. It followed that the sewer system is a "common element" of the condominium as that term is used in WIS. STAT. ch. 703, the Condominium Ownership Act.[2] The parties then stipulated to a dismissal of all claims, but preserved Larson's motion for reimbursement of litigation costs against the Owners Association.
¶ 4 The circuit court determined that Larson should not be reimbursed for litigation costs. The court also effectively determined that, even if Larson was entitled to reimbursement for litigation costs, the request should be denied because the bulk of those requested costs consisted of unreasonable attorney's fees. This appeal follows.
Discussion
¶ 5 Larson's arguments that he is entitled to any reimbursement fall into two general categories, statutory and equitable. We address and reject each of these arguments below.
¶ 6 Having concluded that the circuit court properly denied Larson's request for litigation costs in its entirety, we need not address Larson's challenge to the circuit court's determination that the attorney's fees portion of the litigation costs Larson requested was unreasonable. Even though we do not address that challenge, we observe that we agree with the circuit court's determination that the requested fees did "not pass [the] smell test ... not even close."[3]
A. Larson's Statutory Argument
¶ 7 Larson points to WIS. STAT. § 703.14(1), which provides, in relevant part, that "the common elements are subject to mutual rights of support ... by all unit owners." Based on this language, Larson contends that the other Sunset Condominiums owners must be required to reimburse him for his litigation costs because the statutory language leaves "no wiggle room for unit owners to escape liability for the financial support of the 'common elements.' "
¶ 8 Larson's argument is more of an assertion than an argument supported by a reasoned analysis. Regardless, the argument is flawed because it assumes that the statute requires the "mutual ... support" of all condominium owners for common element expenditures regardless of the circumstances leading to the expenditure. Here, the Sunset Condominiums owners, through their representative body, the Owners Association, affirmatively chose not to pursue litigation. Larson provides no textual analysis or explanation of why WIS. STAT. § 703.14(1) contemplates that a single condominium owner, or subset of owners, may expend funds against the wishes of a condominium association and then force all owners to reimburse the single owner or subset of owners.
¶ 9 So far as we can tell, Larson's interpretation of WIS. STAT. § 703.14(1) would nullify the provisions of the Condominium Ownership Act giving condominium associations, and only condominium associations, the power to make financial decisions regarding common elements and then assess owners to cover expenses. See, e.g. , WIS. STAT. § 703.15(3)(a)1. and 3. ("An association has the power to ... [a]dopt budgets for revenues, expenditures and reserves and levy and collect assessments for common expenses from unit owners; ... [s]ue on behalf of all unit owners...."). We discern no reason to suppose that the legislature intended to give individual owners or subsets of owners the authority to incur expenses preserving or improving common elements and then, in the event of favorable outcomes, force other owners to provide reimbursement.
¶ 10 A hypothetical reveals how expansively and unreasonably Larson interprets WIS. STAT. § 703.14(1). Suppose the common elements of a condominium include several mature trees that are threatened with a disease. Suppose further that there is a treatment that might protect the trees, but the association members vote against paying for the treatment. Under Larson's theory, a single owner could unilaterally pay for the treatment and later recoup that expenditure from all condominium owners if he or she could prove that the treatment in fact saved the trees and that the trees enhanced the value of the common area in an amount exceeding the cost of the treatment. We think it obvious that the legislature could not have intended to give this authority to owners acting outside the statutory governing mechanism-that is, condominium associations.
¶ 11 Here, we need not and do not address whether the Owners Association made a reasonable choice not to pursue litigation. The reasonableness of the Association's decision does not matter because Larson has failed to present a developed argument supporting his view of the meaning of the "mutual rights of support" language found in WIS. STAT. § 703.14(1).
B. Larson's Equitable Arguments
¶ 12 It is unclear whether Larson's equitable arguments are meant to be stand-alone arguments. As we note below, Larson often points to an equitable doctrine and then states that it "supports" his request for reimbursement. However, regardless what Larson means to argue, each of his equitable theories of recovery is a stand-alone theory, and we address and reject each.
¶ 13 Before proceeding, we note that we discern more problems with Larson's various equitable arguments than we discuss below. An overarching issue that we do not fully explore is whether any of the equitable theories make sense in the context of alleged beneficiaries who are represented by a governing body that affirmatively chose not to pursue the path chosen by the party seeking reimbursement. In sum, we do not discuss all possible responses to Larson's arguments because the reasons we do provide are sufficient to affirm the circuit court.
1. Restatement of Restitution
¶ 14 Larson argues that his claim to reimbursement "is supported by" the Restatement of Restitution. Larson points to § 105 of that Restatement, which provides:
(1) Where two persons are tenants in common or joint tenants and one of them has taken reasonably necessary action for the preservation of the subject matter or of their common interests, he is entitled to indemnity or contribution, enforced by means of a lien upon the interest of the other
(a) if he made a request to the other to join in such preservation, or
(b) without such request, if action was immediately necessary and the other was not available.
(2) A person who through legal proceedings procures or preserves property in which he and another have [an] interest may be entitled to reasonable compensation for his services and restitution of his expenses in obtaining or preserving the property.
RESTATEMENT OF RESTITUTION § 105, at 439 ( AM. LAW INST. 1937). Focusing on the "tenants in common" language above, Larson contends that it is undisputed that Sunset Condominiums owners are tenants-in-common owners of the sewer system, and also undisputed that he took reasonable and necessary action to preserve the sewer system as a part of the condominium common elements. It follows, according to Larson, that § 105 of the Restatement of Restitution supports reimbursement from his fellow tenants in common. We are not persuaded for three reasons.
¶ 15 First, Larson does not explain why we are required to follow or should follow this particular Restatement subsection. Larson neither points to any Wisconsin case law adopting the Restatement of Restitution § 105, nor otherwise discusses the need to adopt this particular formulation of law. Rather, Larson merely makes the unsupported assertion that "the legal principles set forth in the Restatements of Law apply."
¶ 16 Second, Larson bases his Restatement of Restitution argument on the premise that he and the other Sunset Condominiums owners are tenants-in-common owners of the common elements. Although Larson claims that this form of ownership is undisputed, we find no place where the Owners Association makes this precise concession. More importantly, Larson has not established that the owners have this status in relation to each other.
¶ 17 Indeed, common-elements ownership is statutorily defined. WISCONSIN STAT. § 703.15(5) specifies: "No unit owner may have any right, title or interest in any property owned by the association other than as holder of a percentage interest in common elements appurtenant to its unit." Larson does not attempt to demonstrate that this statutory definition of common-elements ownership, for all purposes or for purposes of this action, is the same as tenants-in-common ownership.
¶ 18 Third, assuming that there is no difference between tenants-in-common ownership and the common-elements ownership definition found in WIS. STAT. § 703.15(5), Larson also does not explain why Restatement guidance as to tenants-in-common ownership should be layered onto the statutory scheme found in the Condominium Ownership Act, which, as we have seen, gives control over common elements expenditures to condominium associations. See ¶ 9, supra ; see also WIS. STAT. §§ 703.09(1)(d) and (e) (declaration must contain description of common elements and determine percentage interest appurtenant to each unit); 703.10(3) (permitting bylaws to contain provisions regarding use and maintenance of common elements); and 703.13(1) (establishing that every unit owner owns an undivided percentage interest in the common elements, as set forth in the declaration).
¶ 19 In sum, Larson has not persuaded us that the Restatement of Restitution § 105 should apply here.
2. Unjust Enrichment
¶ 20 Larson argues that his reimbursement claim "is supported by" the doctrine of unjust enrichment. Larson relies on the Restatement (Third) of Restitution and Unjust Enrichment § 26 (2011), but we do not dwell on his particular supporting authority because it is beyond dispute that Wisconsin recognizes unjust enrichment as a claim and that such a claim requires proof of an economic benefit to another. See Sands v. Menard , 2017 WI 110, ¶ 30, 379 Wis. 2d 1, 904 N.W.2d 789 ("Unjust enrichment requires proof of three elements ... [including] a benefit conferred on the defendant by the plaintiff...."). As we now explain, we reject Larson's argument because of his failure to establish the economic benefit to the Sunset Condominiums owners.
¶ 21 Larson contends that the benefit to the condominium owners is measured by two appraised values of the sewer system. More specifically, Larson presented an expert opinion that the value of the sewer system is $2,060,500 if measured by the replacement cost of the system, and $3,511,519 if measured using an income approach. The income approach is based on the replacement cost and the expert's opinion that a reasonable sewer user fee would be $100 per month per unit.
¶ 22 Building on these valuations, Larson contends that determining the benefit to each Sunset Condominiums unit is simply a matter of dividing each value by the number of condominium units, that is, 224. Using this method, Larson calculates that the benefit to each condominium unit is at least $9,198.66. Larson compares this number with the cost of his litigation divided by the number of units: $712,075.47 ÷ 224 = $3,178.90. Larson apparently reasons that, because the benefit per unit (at least $9,198.66) exceeds the cost of litigation per unit ($3,178.90), the circuit court was required to order the Owners Association to pay Larson his litigation costs, less Larson's proportionate share of those costs as one of the owners.
¶ 23 We agree with the circuit court that Larson's approach to measuring the benefit is flawed. Part of the reason the circuit court gave for denying litigation costs was the court's agreement with the Owners Association that the correct measure of the benefit requires a comparison of what would have been achieved by the Owners Association through negotiation with what was achieved through Larson's litigation. As the Owners Association's attorney argued before the circuit court, Larson's calculation of the benefit includes no comparison, but rather assumes that the other Sunset Condominiums owners "[sat] on their hands." The other owners did not, however, sit idly by. The other owners, through their association, were pursuing a negotiated agreement that the Owners Association contends would have been affordable and would have avoided the delay, risk, and expense of litigation.
¶ 24 In addition to this reasoning relied on by the circuit court, we fail to understand why either the replacement cost approach or the income approach to valuing the benefit to unit owners makes sense.
¶ 25 As to the replacement cost approach, the condominium owners were never faced with the prospect of needing to replace the sewer system. Simply put, Larson's litigation did not save the owners the cost of replacing the sewer system, and Larson does not explain why this number is meaningful.
¶ 26 As to the income approach, Larson does not explain why this measure makes sense. According to Larson's expert, "[t]he income approach estimates the present value of future benefits (income stream)." We understand the expert to be asserting that a reasonable sewer system user fee would be $100 per month per unit and that the net present value of such an income stream from all units, assuming 42 years of remaining life of the system, yields a net present value of $3,511,519. The owners, however, will not use the system to generate income and we are unable to locate any explanation in the briefing or record as to why hypothetical income is an apt measure of the benefit to the owners.
¶ 27 We acknowledge that it might have been difficult for Larson to produce evidence comparing what would have been achieved through negotiation by the Owners Association with what was achieved through Larson's litigation. Or at least it is not apparent from the record before us how difficult this task would have been. We note that, in the context of responsive arguments made by the Owners Association, we are told that tentative agreements were reached in 2013 and 2014. We are uncertain whether these agreements were such that Larson could have come up with a reasonable estimate of what Sunset Condominiums owners would have faced without his litigation. Regardless, our point here is that Larson did not try. In the absence of a comparison of unit values or unit expenses under the two alternatives, we conclude that the circuit court reasonably rejected Larson's evidence of the benefit of his litigation to the Sunset Condominiums owners.
¶ 28 In sum, Larson's unjust enrichment argument fails because the benefit component of the argument is based on valuations that, on their face, are defective measures of the benefit of Larson's litigation to the Sunset Condominiums owners.
3. The Common Fund Doctrine
¶ 29 Larson argues that the common fund doctrine is applicable to his reimbursement claim. We question whether the doctrine is applicable, but, even if it is, we conclude that it does not support reversing the circuit court.
¶ 30 Our supreme court adopted the common fund doctrine in Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Board , 207 Wis. 2d 1, 558 N.W.2d 83 (1997). There, the court explained that "the [common fund] doctrine has been widely used to deal with the 'free rider' problem inherent in class actions" because "it would be unfair to allow a class to share in the benefits of an action, while forcing the litigating plaintiffs to shoulder all of the costs of the lawsuit." Id. at 36. Larson quotes the following language:
The common fund doctrine is rooted in "the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorney's fees, from the fund or property itself or directly from the other parties enjoying the benefit."
Id. at 36-37 (citation omitted). Larson states: "Clearly, the language [quoted above] includes attorney fees from the property itself or directly from the other parties enjoying the benefit. " (Emphasis in Larson's brief.) However, Larson's reliance on this language is misplaced for two reasons.
¶ 31 First, as with his unjust enrichment argument, Larson failed to present a valid measure of the benefit to the other Sunset Condominiums owners. Under the common fund doctrine, Larson must prove that "the benefits [are] traceable with some accuracy." See id. at 37. Our discussion in the prior section of this opinion shows that Larson did not prove "benefits ... traceable with some accuracy."
¶ 32 Second, Larson fails to adequately address why either the circuit court or this court should treat the other Sunset Condominiums owners as "free riders" within the meaning of the common fund doctrine adopted in Wisconsin Retired Teachers . In that case, the free-rider beneficiaries simply sat on the sidelines while a subset of retirees litigated retirement benefits. See id. at 36-37. Here, the other condominium owners did not sit idly by. Rather, represented by the Owners Association, the owners pursued a different approach and affirmatively opposed Larson's decision to pursue legal action. Accordingly, Larson does not persuade us that the Sunset Condominiums owners are fairly categorized as "free riders" within the meaning of the common fund doctrine.
Conclusion
¶ 33 For the reasons above, we affirm the order of the circuit court.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

There is conflicting information in the record as to whether this was an action taken solely by Castle at the Bay, or rather was a joint effort by Castle at the Bay and Timber Shores. We speak as if it was an action taken solely by Castle at the Bay because that is how Larson speaks of the effort.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

After appellate briefing was complete, we received letters from the parties addressing possible additional authority relating to the reasonableness of the attorney's fees requested. For the same reason that we do not address arguments in the briefs regarding the circuit court's determination that the requested attorney's fees were unreasonable, we do not address the parties' letters.